## Wertz *versus* Blair County.

1. The relations of a pauper mentioned in the 28th sect. of Act of June 13th 1836, are compellable under the Act of April 15th 1857, to maintain him with or without an order of relief having been obtained.

2. The jurisdiction to compel the payment is in the Quarter Sessions.

3. It is the duty of the officers of the poor to provide for insane poor to be repaid by the specified relations.

4. A poor district having paid the expenses of maintaining a pauper in the state lunatic asylum, may recover the amount from the specified relations; the proceeding to recover must be in the Quarter Sessions.

5. The expenses of insane paupers committed to the State Lunatic Asylum are payable by the district to which the paupers are chargeable.

May 17th 1870. Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.

Error to the Court of Common Pleas of *Blair* county: No. 39, to May Term 1870.

This was an action of assumpsit by the county of Blair against Jacob Wertz, commenced March 8th 1865. The action was brought to recover the amount paid by the plaintiff to the State Lunatic Asylum for the support of John Wertz, son of the defendant and an insane pauper, who was of full age, and who, upon an indict-

[Wertz *v.* Blair County.]

ment against him for breach of the peace, had been found by the jury to be insane and by order of the Court of Quarter Sessions had been sent to the State Lunatic Asylum.

On the trial before Taylor, P. J., it was proved that the defendant was of sufficient ability to maintain his son. The son had not been formally declared a pauper, he was married, and there was evidence that he worked as a laborer. The court charged: "There being in this case no question of fact in dispute, the court, reserving for further consideration on a motion for a new trial, the legal question whether the defendant, upon the facts disclosed and undisputed, is liable in this action to the plaintiff, directs the jury to find for the plaintiff."

The verdict was for the plaintiff for $897.08.

The court afterwards refused a new trial and directed judgment to be entered on the verdict.

The plaintiff took a writ of error and assigned for error the charge of the court.

*J. Banks* and *Scott*, for plaintiff in error.—The liability of a father to maintain a child ceases when the child comes of age, unless the child has become chargeable as a pauper : 2 Kent's Com. 198, 199; Mills *v.* Wyman, 3 Pick. R. 207; Boyd *v.* Sappington, 4 Watts 247. The remedy is not by a common-law action : Acts of April 14th 1845, sect. 10; Pamph. L. 441; Purd. 676, pl. 7; March 31st 1860, sect. 66–70; Pamph. L. 445; Purd. 262, pl. 66–70; Lower Augusta Township *v.* Northumberland Co., 1 Wright 146; Act of June 13th 1836, sect. 28; Pamph. L. 545; Purd. 799, pl. 33; Nippenose *v.* Jersey Shore, 12 Wright 402; Sugar Loaf *v.* Schuylkill Co., 8 Id. 481; Schuylkill Co. *v.* Montour, Id, 484; Acts of April 8th 1861; Pamph. L. 248; Purd. 677, pl. 17 et seq., April 15th 1857, Pamph. L. 191.

*J. F. Freuauff* and *S. S. Blair*, for defendant in error, referred to the same acts: Lower Augusta *v.* Northumberland Co.; Nippenose *v.* Jersey Shore, supra; Erisman *v.* Directors of Lancaster Co., 11 Wright 509; 4 Stephens on Laws of England 283.

The opinion of the court was delivered, July 7th 1870, by

READ, J.—The present system of poor laws in England, practically originated in the statute of 43 Elizabeth, c. 2, which, in its 7th section enacted: "That the father and grandfather, and the mother and grandmother, and the children of every poor, old, blind, lame and impotent person, or other poor person not able to work, being of sufficient ability, shall at their own charges, relieve and maintain every such poor person, in that manner, and according to that rate, as by the justices of the peace of that county, where such sufficient person, dwell, or the greater number of them,

[Wertz *v.* Blair County.]

at their general quarter sessions, shall be assessed, upon pain that every one of them shall forfeit twenty shillings for every month which they shall fail therein."

"The parish," says Serjeant Stephen, in his Commentaries, vol. 3, p. 174, "however, will be immediately exonerated from the burthen, if the pauper has any relation competent and by law compellable to maintain him." "They are liable to maintain him at such rate as shall be assessed, by the order of the justices at their general quarter or petty sessions, on refusal to obey such order, the sums so assessed are recoverable (with penalties), by a summary proceeding before two justices of the peace, and may be levied, by distress and sale of the goods and chattels of the offender, in default of which he may be committed to prison."

The 7th section of the statute of Elizabeth was substantially re-enacted in this state, in the 29th section of the Act of 9th March 1771, 1 Smith 344, the penalty being raised to forty shillings. In the Act incorporating the Guardians of the Poor for the City and Districts, passed 29th March 1803, in its 29th section, which is framed from the above section, the word "grandchildren" is introduced among those compellable to maintain their poor relations, and the penalty is increased to seven dollars for every month. The revisers, in speaking of what is now the 28th section of the Act of the 13th June 1836, say, it "is derived from the 29th section of the Act of 1771. We have added 'grandchildren' to the enumeration of persons under legal obligation to relieve and maintain poor relations; conceiving that as grandparents were already bound to support grandchildren, the obligation ought to be reciprocal."

By the 28th section of the Act of 1836, Pamph. L. 547, " the fathers and grandfathers, and the mothers and grandmothers, and the children and grandchildren of every poor person not able to work, shall at their own charge, being of sufficient ability, relieve and maintain such poor person at such rate as the Courts of Quarter Sessions of the county where such poor person resides shall order and direct, on pain of forfeiting a sum not exceeding twenty dollars for every month they shall fail therein, which shall be levied by the process of the said courts, and applied to the relief and maintenance of such poor person:" Seibert's Appeal, 7 Harris 56.

By the Act of the 15th April 1857, Pamph. L. 191, the Courts of Quarter Sessions of the several counties of this Commonwealth have power to hear, determine and make orders and decrees, in all cases arising under the 28th section of the Act of 13th June 1836, either upon the petition of the overseers of the poor, or of any other person or persons having an interest in the support of such poor person or persons, and either with or without an order of relief having been first obtained.

There can, therefore, be no doubt that the relations of a pauper mentioned in the 28th section of the Poor Law, if competent and of sufficient ability, are compellable to maintain him, and that the jurisdiction in relation to it is vested in the Court of Quarter Sessions, whose power is limited to twenty dollars per month.

The insane poor, a class " afflicted with the most pauperizing of all diseases," always have been within all the provisions of the poor laws. It is the duty of the overseers to provide such insane persons with the necessary means of existence, to be repaid by the specified relations if of sufficient ability. By the Act of 1st April 1848, Pamph. L. 323, the overseers of the poor in Blair county are abolished, and the whole county is made one poor district, and governed by three directors, who are a body corporate, by the name of The Directors of the Poor and of the House of Employment for the County of Blair.

In the act incorporating the " Pennsylvania State Lunatic Hospital," it is provided that " indigent persons and paupers shall be charged for medical attendance, board and nursing, while residents in the hospital, no more than the actual costs."

From all its provisions, it is the evident intention of this law that the expenses of insane paupers shall be paid by the poor districts to which they are chargeable. The only difference being that the maintenance is paid to the hospital, instead of being paid within the limits of the poor district.

This act has been the subject of several judicial decisions. In The Township of Franklin v. The Pennsylvania State Lunatic Hospital, 6 Casey 522, it was held, where the Court of Quarter Sessions directs an insane person to be committed to the Pennsylvania State Lunatic Hospital, as unsafe to be at large, the overseers of the proper township are liable for the maintenance of such lunatic; and if the lunatic has relatives who by law are bound for his support, the local authorities must look to them for reimbursement. This case is distinctly affirmed in Shenango Township v. Wayne Township, 10 Casey 184; and in Lower Augusta Township v. Northumberland County, 1 Wright 143, the doctrine in 6 Casey is distinctly repeated.

It is clear, therefore, the poor district so paying, has direct recourse to the relatives bound to maintain the pauper. John Wertz, Jr., was an insane pauper, committed to the State Lunatic Hospital, by the Quarter Sessions of Blair county, as unsafe to be at large, at the expense of the county of Blair, who have paid for his maintenance at the hospital, and now seek to recover the amount from his father, who is of sufficient ability to maintain his insane pauper son.

There can be no doubt of his ultimate liability, but the question before us is, whether this is the proper form of proceeding. We think not. The proceeding should be in the Court of Quarter

[Wertz *v.* Blair County.]

Sessions, which by the Acts of 1836 and 1857, have ample powers to make the proper orders and decrees, and to enforce them.

As the father must be ultimately liable, it is certainly a case for settlement without further litigation.

Judgment reversed.