## Commonwealth v. Auman

*Hazel H. Brown,* assistant district attorney, for Commonwealth.

*S. W. Rhoads,* for defendant.

WINNET, J., April 24, 1940.—This is an action under The Support Law of June 24, 1937, P. L. 2045, 62 PS §1973, to compel a son to support an indigent father.

The father, William Auman, an indigent person, had applied for relief. It appearing to the relief authorities that he had a son who was able either to support, or aid in his support, he was referred to the court for proceedings against this son, John Auman. The son contested the father's right to relief on two grounds: (1) That he was unable to aid in his father's support, and (2) the father had abandoned him and his mother years ago and was not worthy of any help from him. Both this kind of case and this type of defense now appear frequently before this court by reason of the attempt of the relief authorities to compel children to support their parents before they become a public charge. It is because of this frequency that we set forth the reasons why the duty to support is not dependent upon the father's past treatment of the child.

The facts are not in dispute. William Auman, the indigent father, deserted his family at the turn of the century. He has not seen his son, the respondent, since early childhood, and the son never saw him. Back in 1907 support proceedings were started against him in Wilkes-Barre. He says he paid the order imposed on him for a

period of three or four years. Some 28 years ago he divorced his wife, respondent's mother, and a few years thereafter remarried. The facts compel the conclusion that William Auman was never a real father to respondent. Morally he is not entitled to any aid from his son.

The legal obligation, however, of respondent is clear under the statute. At common law a child was not bound to support its parents or grandparents: Gray, Admx., v. Spalding, 58 N. H. 345; Herendeen et al., etc., v. De Witt, 49 Hun 53 (N. Y.). In Rex v. Munden, 1 Str. 190, 93 Eng. Rep. 465, the court said:

"By the law of nature a man was bound to take care of his own father and mother; but there being no temporal obligation to enforce that law of nature, it was found necessary to establish it by Act of Parliament . . .".

The act referred to was the statute of 43 Eliz. c. 2, 2 Eng. Stat. at L. 702, sec. 7, which provided:

"That the Father and Grandfather, and the Mother and Grandmother, and the Children of every poor, old, blind, lame and impotent Person, or other poor Person not able to work, being of a sufficient Ability, shall, at their own Charges, relieve and maintain every such poor Person in that Manner, and according to that Rate, as by the Justices of Peace of that County where such sufficient Persons dwell, or the greater Number of them, at their General Quarter-Sessions shall be assessed; upon Pain that every one of them shall forfeit twenty Shillings for every Month which they shall fail therein."

In this State, section 7 of the statute of Elizabeth was substantially reënacted in section 29 of the Act of March 9, 1771, 1 Sm. L. 332, 334, the penalty being raised to 40 shillings. And through the years that have passed the law was reënacted, amended, and supplemented many times from 1803 down to 1937. In substance, however, the statutory duty has not been changed during the past 170 years. The Support Law, supra, provides, section 3:

"The husband, wife, child, father, mother, grandparent and grandchild of every indigent person shall, if of suf-

ficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides, shall order or direct . . .".

This statutory duty to support is coexistent with the necessity for and the ability to aid. The court may prescribe to what extent the aid should be furnished: Condon et al. v. Pomroy-Grace, 73 Conn. 607. A very early case indicating that the duty to aid is not dependent on the conduct of the parent is Allen v. Coster, 1 Beav. 202, 48 Eng. Rep. 917. Here the children were abandoned by the parents at a very early age. Later these children were the beneficiaries of a legacy which amply provided for their support, and an application was made to the court to increase the maintenance so that the parents could also receive some aid. The Master of the Rolls (Lord Langdale) said, in allowing the parents relief:

"I think this is a case in which the Court can increase the maintenance of the children for the support of their parents; I feel reluctant in doing it, for the conduct of the parents has been of the worst kind . . .".

Counsel for respondent contends that the court should apply the law of support between husband and wife and refuse it where the claimant is clearly unworthy. That line of cases is obviously distinguishable. The duty of a husband to support a wife ceases when their status has terminated. When, through the conduct of the parties, the status is at an end, our court will refuse support to the unworthy spouse: Commonwealth ex rel. v. Crabb, 119 Pa. Superior Ct. 209; and the common pleas court may officially decree, through divorce, its termination. The natural relationship of parent and child cannot be so ended, and whenever that relationship exists there is a duty to support. See In re O'Donnell, 126 Pa. 155, In re James, 116 Pa. 152, O'Connor's Appeal, 104 Pa. 437, Wertz v. Blair County, 66 Pa. 18, Commonwealth of Pa. v. Hecker, 82 Pa. Superior Ct. 123, and Henry's Estate (No. 1), 28 Pa. Superior Ct. 541.

Respondent contended that his earnings were $37.50 per week, and enumerated his expenses in an attempt to show the court that he has not the means to support his father. We find, however, that he has the means to aid his father and must make provision for him out of his earnings. We, therefore, direct and order that John Auman, respondent, pay William Auman, the father, the sum of $1 per week for his support.