Edward Cole and Thomas Cole, Partners, trading as Cole Brothers, v. The Manchester Fire Assurance Company, Appellant.

188 345
188 358
188 345
189 261
188 345
192 364
188      345
  20 SC  393
188      345
209      337
188      345
 30 SC  220
 30 SC  221

*Insurance—Fire insurance—Proofs of loss—Evidence.*

In an action on a policy of fire insurance, proofs of loss are admissible only for the purpose of establishing the fact that the plaintiff has complied with the policy in furnishing proper proofs of loss, and when their sufficiency has been passed upon by the court they have performed their function, and cannot be used, against the objection of defendant as to their relevancy, as affirmative evidence of the amount of the loss.

Where proofs of loss have been admitted under objection and exception as affirmative evidence of the amount of the loss, and the other evidence in the case as to the amount of the loss is of a most meager and unsatisfactory character, and the court does not instruct the jury to disregard the proofs of loss, a verdict and judgment for the plaintiff for the full amount stated in the proofs of loss, will be reversed.

Argued Oct. 19, 1898. Appeal, No. 106, Oct. T., 1898, by defendant, from judgment of C. P. Lawrence Co., Dec. T., 1895, No. 70, on verdict for plaintiffs. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit upon a policy of fire insurance. Before MILLER, P. J., of the 35th judicial district, specially presiding.

At the trial when Thomas Cole was on the stand a paper entitled " Proof of Loss," policy No. 1,464,271, amount of policy $1,050, dated Ellwood City, Pa., March 22, 1895, addressed to the Manchester Fire Assurance Company of Manchester,

England, signed Thomas Cole, purporting to be sworn to before S. P. Turner, justice of the peace, March 22, 1895, was shown witness, who testified as follows :

" Q. Examine that paper Mr. Cole and state whose signature that is to that paper.   A. That is my own.   Q. State whether or not you made affidavit to that paper, if so, before whom."

Objected to by defendant's counsel for the reason that it is immaterial, and irrelevant, and can be shown only to affect the assurer, by the written paper purporting to be the proof of loss. Also, because it does not purport to have been signed by anybody else but Thomas Cole, and he is only one of the assured, the policy of insurance requiring the proofs to be made by the insured.

By the Court: An inspection of the paper shown to the witness not clearly evidencing on its face whether Thomas Cole was sworn to the same or not, the inquiry as to whether or not he was sworn will be admitted and an exception sealed for the defendant.

"A. I did, before S. P. Turner, J. P." [1]

Paper entitled " Proof of Loss," policy No. 54,487, amount of policy $1,050 addressed to the Allemannia Fire Insurance Company of Pittsburg, Pa., dated March 22, 1895, signed Thomas Cole, purporting to be sworn to before S. P. Turner, J. P., marked exhibit "B," shown witness.   "Q. Examine that paper, Mr. Cole, and state whether or not you made affidavit to that paper."

Objected to by defendant's counsel same as before and to which objection the same ruling and exception by the court.

" A. I did.   Q. Before whom did you swear to that?   A. S. P. Turner." [2]

Exhibits " C " and " D " being proofs of loss dated June 19, 1895, shown witness.

" Q. State, Mr. Cole, whether those are your signatures. A. They are.   Q. State whether or not you made affidavit to those papers."

Objected to by defendant's counsel, that it is incompetent, irrelevant and immaterial whether he did or not, the best evidence being the paper itself as made out under the supervision of an attorney, regularly employed by them for that purpose. They cannot in any event affect the defendant in this case by

anything, except what appears on the paper itself and was brought to its notice and knowledge. It also appears upon these papers written out specifically for the justice of the peace to sign, marked in pencil, "sign here."

To which objection the court makes the same ruling and sealed exception for defendant's counsel.

"A. I did. Q. Before whom? A. S. P. Turner." [3]

Plaintiffs' counsel offer in evidence exhibit "A," being proof of loss addressed to the Manchester Fire Insurance Company of Manchester, England, on policy No. 1,464,271, and proof of loss addressed to the Allemannia Fire Insurance Company, of Pittsburg, Pa., on policy No. 54,487, being exhibit "B," for the purpose of showing that the plaintiffs furnished to the defendant proofs of loss as required by the provisions of the policies.

Objected to by defendant's counsel for the reason that the alleged proofs of loss do not comply with the conditions of the policy of insurance; that they are not sworn to and do not give the items of the loss as provided in the conditions of the policies of insurance, nor the value of the items, and that they are not made by the insured as provided for by the conditions of the policies.

By the Court: The court is of the opinion that the proofs of loss are a substantial compliance with the requirements and conditions of the policy, but aside from this there is evidence which, in our opinion, ought to be submitted to the jury for them to find whether or not there was a waiver of any informality in the conditions and proofs. The objection is, therefore, overruled, the offer admitted and an exception sealed for the defendant. [4]

Same read in evidence by Mr. Martin as follows:

"Policy No. 54,487. Proof of loss. Amount of policy, $1,050.00. Proof of loss to the Allemannia Fire Insurance Company, of Pittsburg, Pa. By your policy of insurance No. 54,487, issued at your Ellwood City, Pa., agency, dated April 19, 1894, and expiring April 19, 1895, at 12 o'clock, noon, you insured Cole Bros. against loss or damage by fire to an amount of $1,650.00 according to the terms and conditions printed therein; the written portion and all endorsements, transfers and assignments being as follows:

" Which said policy was continued in force until April 19, 1895, at 12 o'clock, noon.

" The total insurance on said property, or any part thereof, at the time of the fire, including the above mentioned policy, was two thousand one hundred dollars ($2,100.00) and no more. Full copies of the written portions of all policies and endorsements are hereunto annexed or will be furnished on demand.

" The property described in said policy belonged, at the time of the fire hereinafter mentioned, to Cole Brothers (the insured) and no other person or persons had any interest therein, except as follows :—Excepting the building described, or containing the property described in said policy, was occupied at the time of the fire as follows : By Cole Brothers as store room, and Edward Cole, one of the insured, occupied the upper story as a dwelling house.   (The building and land occupied by same was owned in fee simple by A. C. Cole.)

" No assignment, or transfer, or incumbrance, or change of ownership or occupancy of the property described has been made since the issue of said policy, except as follows :

" A fire occurred on the first day of March, 1895, about the hour of 10 : 30 o'clock P. M.

. " The cause of said fire is unknown by insured.   The actual cash value of each specific subject thus situated and described by the aforesaid policy at the time of loss, and the actual loss and damage by said fire to the same, as shown by annexed schedule and for which claim is hereby made, were as follows :

" First item of policy, sound value $2,500.00 ; total loss, $2,500.00 ; claimed under this policy, $1,000.00.   Second item of policy, $100.00 ; total loss, $100.00 ; total insurance, $100.00 ; amount named in this policy, $50.00 ; claimed under this policy, $50.00 ; total amount claimed of this company under this policy, $1,050.00.

" The said fire did not originate by any act, design or procurement or fraud on part of assured, or this affiant, or in consequence of any evil practice done or suffered by said assured or this affiant ; nothing has been done by or with the privity or the consent of the assured, or this affiant to violate the conditions of this policy, or render it void ; no articles are mentioned herein but such as were in the building damaged or destroyed and belonging to, and in the possession of, the said

assured at the time of said fire; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss has in any manner been made.

"Any other information that may be required will be furnished on call, and considered a portion of these proofs.

"It is expressly understood and agreed, that the furnishing of this 'Proof of Loss' blank to the assured, or making up of proofs by an adjuster, or any agent of this company or companies named herein, is not a waiver of any rights of said company.

"Witness my hand at Ellwood, Pa., this 22d day of March, 1895.

"Personally appeared Thomas Cole, (of Cole Brothers) signer of the foregoing statement who made solemn oath to the truth of the same, and that no material fact is withheld that the said company should be advised of, before me, this 22d day of March, 1895.

"THOMAS COLE."

"STATE OF PENNSYLVANIA,  ⎱ ss:
"COUNTY OF LAWRENCE.     ⎰

"I, S. P. Turner, a Justice of the Peace, residing in the borough of Ellwood City, Pa., most contiguous to the property herein described, hereby certify that I am not concerned in the loss or claim above set forth, either as a creditor or otherwise or related to the assured or sufferers; that I have examined the circumstances attending the fire, or damage as alleged, and that I am well acquainted with the character and circumstances of the assured, and do verily believe that the assured has by misfortune and without fraud or evil practice, sustained loss and damage on the property insured to the amount of two thousand five hundred ($2,500.00) dollars.

"In testimony whereof, I have hereunto set my hand and official seal, this 22d day of March, A. D. 1895.

"S. P. TURNER, J. P."

Schedule of insurance and apportionment of claim.

"Number of policy, 54,487. Date or expiration of policy, April 19, 1895. Name of company, Allemannia Fire Insurance Company. First item, $1,000.00; amount of insurance, $1,000.00; second item, $50.00; amount claimed, $50.00;

amount insured, $50.00; amount claimed, $50.00; total,
$1,000.00—$50.00."

Schedule, statement of loss.

" The amount of goods in the above store and purchased by
Cole Brothers on April 22, 1893, as shown by invoice at that
time, is about $2,500.00; store fixtures, about $100.00.

" Stock of goods in store at time of fire equal to as much or
more than at time of purchase, as shown by schedule hereto at-
tached and made a part of this proof of loss.

" The Allemannia Fire Insurance Company of Pittsburg, Pa.,
(March 22, 1895.)   Gentlemen: Our stock consisted of general
merchandise as follows:       °

      "About $900.00 worth of groceries.
       "      700.00 worth of dry goods and notions.
       "      700.00 worth of boots and shoes.
       "      200.00 worth of gents' furnishings.
       "      100.00 worth of store fixtures.
       "       25.00 worth of hardware.
                              " Yours truly,
                                " COLE BROTHERS."

The other proof of loss (Manchester) offered in evidence be-
ing similar to the one just above offered and read in evidence,
the reading of it is waived.

The court charged in part as follows:

[The plaintiffs made out what they evidently supposed to be
proper proofs of loss against each company and sent them to
the companies.   There is no evidence in this case that would
tend to show but that the plaintiffs thought they were making
the kind of proofs that they ought to make.   And it is also in
evidence that they visited an attorney and had the proofs pre-
pared by him, doubtless feeling that they were not competent
to do that.] [10]   [But the plaintiffs claim that even if the
proofs were defective, the defect or defects have been waived
by the insurance companies since the date of the letter of
March 25, 1895, addressed by Mr. Kellerman to the plaintiffs.
They have offered evidence to show that Mr. Hammer, repre-
senting the insurance companies, called on the plaintiffs at
Ellwood City on April 19, 1895; that the plaintiffs then and
there furnished certain duplicate bills of goods purchased from

the date of the opening of the store, in 1893, to the date of the
fire, on March 1, 1895; and also a ledger, bank book and a book
called a sales book; that a considerable time was spent in going
over these books and papers; that certain matters were discussed
by the parties at this meeting, but that the objections originally
raised to the proofs of loss were not raised at this meeting; that
subsequently one of the defendants and his father made a visit
to Pittsburg, the first Thursday after this April 19.   And the
plaintiffs offered testimony as to what took place there, and
that all these meetings and negotiations occurred within the
time that the proofs of loss should have been furnished, and
they ask you to find from all this evidence that the defects in
the proofs of loss were waived by the defendant companies;
that is, because at these meetings and the talks and discussions
in Ellwood on the nineteenth, and at Pittsburg on the subse-
quent Thursday, the insurance companies or their agents did
not raise any question about these defects, therefore they
waived them.   You also have the evidence offered by the
defendant of what took place at the meeting of April 2 at
Pittsburg, the one spoken of by Mr. Hammer of April 19 at
Ellwood City, and the meeting at Pittsburg on the following
Thursday.   Mr. Hammer states that at one of these meetings
in Pittsburg he expressly told the party, the plaintiffs that were
there, that the insurance companies insisted on their objections
to the proofs.   This is denied by the plaintiffs, and it is for you
to determine how this is.   That is, did Mr. Hammer tell them,
or tell either party, plaintiff, that was there, that he insisted—
the insurance companies insisted—on their objections to their
proofs of loss?   If you should find that at the meeting in Pitts-
burg on April 19 Mr. Hammer told either of the plaintiffs that
the companies insisted on the proofs being corrected, then we
say to you that you should not find a waiver of the proofs and
that you should find a verdict for the defendants in both these
cases.   The reason for that is this: If after all the discussions
had taken place and the correspondence between the parties had
occurred, Mr. Hammer, acting for the two companies, informed
them that the companies insisted on the defects of the proofs
of loss—if you find that as a fact, as testified to by him and as
denied by whichever one of the plaintiffs it was that was there—
I do not remember which one—if you find that fact in favor of

the defendant, then there could be no recovery. If that was the thing done at the last meeting there was no waiver. But if you find this fact in favor of the plaintiffs, then you will proceed to the consideration of the evidence offered by both plaintiffs and defendant relating to these several meetings at Pittsburg and Ellwood and the letters written on March 25 and April 16.] [11] [Have the plaintiffs shown, from all the evidence, that of the plaintiffs, as well as that of the defendant, that the agents of the defendant had by their acts or declarations caused them to reasonably infer that it did not mean to insist on the defects in the proofs? In arriving at a conclusion as to this you will consider what was said and done at the meeting of April 2, April 19, and the meetings immediately succeeding April 19, as well as the letters of March 25 and April 16, written by the insurance company to the plaintiffs. You will recall what was said at these several meetings—what was discussed, the letters themselves of March 25 and April 16, and find whether or not from all this the plaintiffs might reasonably infer that the insurance company did not mean to insist on the defects in the proofs, for unless you find this in favor of the plaintiffs—that is, that they had a right to reasonably infer that the insurance company waived that—the plaintiffs cannot recover and the verdict must be in favor of the defendant.] [12] [The defendant contends that the sending of these amended proofs is evidence that the plaintiffs did not believe that the defendant had waived the defects in the first proofs. And the plaintiffs contend that it ought not to lead you to such a conclusion. It is for you, gentlemen, to say what induced the plaintiffs to send the amended proofs of June 19, 1895, and of September, 1895. If it leads you to the conclusion, taking all the evidence in the case, that they did not believe that the defendant had waived these defects, then they cannot recover. But if you find that they did believe, notwithstanding their sending these amended proofs, from the acts and declarations of the insurance company and its several letters that it had waived the defects, and if you find preceding that, that the acts and declarations were such as to induce the plaintiffs to reasonably infer that they were waived, then you would find for the plaintiffs, in case you find that the evidence establishes the fact that they had suffered a

loss.] [13]  [But for whatever amount you are satisfied the plaintiffs suffered loss up to the amount of the policy in each case you could find for the plaintiffs, if you are otherwise satisfied that they are entitled to recover.  You have the evidence of the plaintiffs.  It is true they tell you they do not know how much of this or that sum is groceries, or this dry goods or that notions, or that boots and shoes—they tell you they do not know. And inasmuch as one of the plaintiffs was in that store all of the time you have a right to take the testimony of that witness, as to the fact he did not know these matters, into consideration in arriving at a conclusion.  He says, in a general way, that there was over $2,500 worth of goods in the store, and the two traveling salesmen testified substantially to the same thing.  It is for you to say whether that is satisfactory to you, and whether that leads you to a conclusion in your minds that would allow you to give a verdict in favor of the plaintiffs. If you are satisfied that the dry goods, the merchandise in that store exceeded the amount of $2,000—if you are satisfied of that from all the evidence in the case, then you would be justified in finding a verdict in favor of the plaintiffs in each of the cases for $1,000.] [14]

Verdict and judgment for plaintiffs for $1,174.03.  Defendant appealed.

*Errors assigned* among others were (1–4) rulings on evidence, quoting the bill of exceptions; (10–14) above instructions, quoting them.

*B. A. Winternitz,* with him *John G. McConahy,* for appellant. —Proofs of loss are conditions precedent to the right of action of the insured, and the question of their sufficiency is for the court.  They are admitted in evidence to show only that the requirements of the policies in that respect have been complied with: Ins. Co. v. Sennett, 41 Pa. 161; Ins. Co. v. Schreffler, 42 Pa. 191; Ins. Co. v. O'Neill, 110 Pa. 548; Welsh v. London Assurance Corp., 151 Pa. 607; Beatty v. Ins. Co., 66 Pa. 9: Thierolf v. Ins. Co., 110 Pa. 37; Thomas v. Ins. Co., 5 Pa. Superior Ct. 383.

There was nothing in the case from which the jury could infer that defendant had waived any of its rights under the policies: Diehl v. Ins. Co., 58 Pa. 452; Desilver v. Ins. Co., 38 Pa.

130; Warner v. Ins. Co., 1 Walker, 315; Earley v. Ins. Co., 178 Pa. 631; Sensinger v. Boyer, 153 Pa. 628; Waters v. Wolf, 2 Pa. Superior Ct. 200; Henry v. Gilliland, 103 Ind. 177.

Under the testimony of the plaintiffs themselves we think that we could have asked the court to declare the policy void upon the ground of fraud in the proofs of loss and statements of the insured: Ellis v. Ins. Co., 7 Pa. Superior Ct. 264; Claflin v. Ins. Co., 110 U. S. 81; Herstine v. Lehigh Valley R. R., 151 Pa. 245; Teerpenning v. Ins. Co., 43 N. Y. 279; Brown v. Elliott, 4 Daly, 329.

*J. Norman Martin,* for appellees.—The proofs of loss were put in issue by the pleadings. They were offered for a specific purpose; for the purpose of showing that the plaintiffs furnished to the defendant proofs of loss as required by the provisions of the policies. This fact was in issue. The objection of defendant's counsel was not that the proofs of loss were incompetent for the purpose stated in the offer, but went to the contents of the paper. The pleadings alleged proofs furnished and a waiver of defects, and the proofs were admitted, not to establish the loss, or the amount of it, but for the specific purpose mentioned above. In Lycoming Ins. Co. v. Schreffler, 42 Pa. 188, the statement was admitted generally and not for a specific purpose. But in Klein v. The Franklin Insurance Co., 13 Pa. 247, the objection was general, not to the competency of the proofs for a particular purpose, and the judgment was sustained.

The wrongful admission of a deed in evidence is cured by a pointed and positive instruction to the jury to disregard it: Cadwallader v. Brodie, 13 Atl. Rep. 483.

A waiver of objections may be inferred from mere silence or from subsequent offers of compromise: Gould v. Ins. Co., 134 Pa. 570; Whitmore v. Ins. Co., 148 Pa. 405; Ins. Co. v. Erb, 112 Pa. 149; Penna. Ins. Co. v. Dougherty, 102 Pa. 568; Susquehanna Mut. Fire Ins. Co. v. Staats, 102 Pa. 529; Ben. Franklin Fire Ins. Co. v. Flynn & Hamm, 98 Pa. 635; Inland Ins. & Deposit Co. v. Stauffer, 33 Pa. 397; Fritz v. Lebanon Mut. Ins. Co., 154 Pa. 384; Oswalt v. Hartford Fire Ins. Co., 175 Pa. 427; Carey v. Allemania Fire Ins. Co., 171 Pa. 204; Bonnert v. Penna. Ins. Co., 129 Pa. 558.

OPINION BY MR. JUSTICE DEAN, November 7, 1898:

On April 19, 1894, each of defendant companies issued to plaintiffs a policy of insurance against fire in the sum of $1,050, the insurance to be in force for one year from date; the policies were on the same stock of goods in plaintiff's store at Hazeldell in Lawrence county, consisting of dry goods, notions, groceries, etc. On night of March 1, 1895, the property was wholly destroyed by fire. Immediately after the loss, the insured notified the companies of it, and thereupon, Charles P. Kellerman, agent and adjuster for both companies went to Hazeldell and called upon the insured; after considerable inquiry he offered to settle with plaintiffs for a sum equal to about half the two policies, which offer the plaintiffs declined. On March 22, following the fire the plaintiffs made out proofs of loss and transmitted them to the companies. The receipt of these proofs was acknowledged and the companies at the same time called the attention of the insured to what they alleged were defects, such as, that they were not sworn to, the written parts of the policies were not copied, nor was there a statement of the loss by items, and, further, that they would not be accepted as proper proofs. On April 16 following, Hammer, an adjuster for both companies, wrote to the insured again calling attention to the alleged deficiencies in proof and requesting them to hurry up the amendments. Immediately after, the insured wrote to Kellerman, the first adjuster, that they had duplicate bills in their possession, and were ready to meet him any time he would name. In response, the companies notified the insured that Hammer, their second adjuster, would be at Ellwood on April 19, and requesting them to meet him there with their papers, invoices and books. They accordingly met on that day and the insured produced many papers and invoices tending to show the quantity and value of the goods on hand at date of fire; they also made statements from recollection to the same effect. Hammer made a memorandum in writing from these papers and statements showing approximately the loss which Thomas Cole, one of the partners, signed, stating " this is substantially correct and true." Thomas Cole met Hammer shortly after in Pittsburg and was again offered $1,000 to compromise and save litigation, which offer was again refused. On June 19, the insured again prepared proofs of loss and sent them to the

companies and were again notified that they were not satisfac-
tory. On September 16, the insured again made out proofs
of loss and transmitted them to the company and were again
informed the proofs were not in compliance with the terms of
policies and were unsatisfactory. Thereupon on November 23,
1895, plaintiffs brought suit against both companies. They
defended on the ground that proofs of loss were not furnished as
required by the policies ; that plaintiffs did not produce, as re-
quired, books of account, invoices, bills, vouchers and copies
thereof, although often requested so to do; the plaintiffs re-
plied that any technical defects in such proofs had been waived
by defendant. At the trial the real question in the case and
the one on which it turned was what was the amount of plain-
tiffs' loss. The preliminary proofs are conditions precedent;
what constitutes them is determined by the contract and, the
proofs being in writing, that is a question for the court. Here,
the court first held that the proofs made by plaintiffs were a
substantial compliance with the requirements and conditions of
the policy. If it had held, that on the face of them they were
not, that would have ended plaintiffs' case, unless plaintiffs of-
fered to follow them with evidence that defendant had waived
the service of such preliminary proofs by conduct which misled
plaintiffs and estopped defendant from insisting on the condi-
tion as a prerequisite ; but having been decided by the court to
be a sufficient compliance with the requirements of the policy,
as the trial then stood, the plaintiffs had the right to proceed
to establish their claim to the satisfaction of the jury, not by
exhibiting to them the proofs of loss, but by evidence independ-
ent of them. But the proofs were admitted as affirmative evi-
dence of the loss, against the objection of defendant to their
relevancy. They were not admissible for that purpose ; they
did not concern the jury, and were both incompetent and irrel-
evant. True, it might turn out during the progress of the trial
that for some purposes they were relevant ; they might have
been offered by defendant to contradict the testimony of plain-
tiffs or to show falsehood, fraud or false swearing ; and possibly
they might have been offered to contradict evidence on part of
defendant if they had denied notice of any particular items of
loss. But, for the time being, plaintiffs had only established
their right to sue, and the proofs were not relevant for any other

purpose. They were however admitted and read to the jury as establishing the value of the property destroyed. Without them the evidence as to the quality, quantity and value of the goods was of a most meager and unsatisfactory character. Taking the duplicate bills of plaintiffs' purchases from whole-sale establishments and the average daily sales, according to their own statements, there could not have been on hand at the date of the fire, even approximately, the quantity of goods claimed to have been destroyed. It is almost incredible that two business men, having daily access to and sight of a small stock of goods in a country store, could have been so ignorant of any of the details necessary to establish their loss, even con-ceding, as they claim, that they kept no cash account, that their day book was destroyed, leaving only their ledger. Their tes-timony and that of Gomer Griffiths and William Geisler of the same character was substantially the only legal evidence of the extent of the loss. The jury awarded the full amount of the claim. We think it more than doubtful that the jury on this testimony alone could have so found even against an insurance company. But the irrelevant evidence of the proofs of loss was before them; these specified it with some degree of particularity and supplied what was vague in the oral evidence. They were not formally withdrawn from the jury in the general charge, nor were they then instructed to disregard them. They were instructed that the proofs of loss were not sufficient, and that unless there was a waiver by the company they should find for defendant. The implication was, if they found defendant had waived the presentation of such proofs, then the papers erro-neously admitted were for their consideration. The jury should have been told by the learned judge in plainest terms that the proofs of loss, whether sufficient or insufficient, whether waived by the company or not, should be entirely excluded from their consideration in making up their verdict. As the case stood at the close of the evidence, the learned judge had changed his ruling permitting Thomas Cole to testify in explanation of the absence of a proper jurat to the proofs, but a careful read-ing of what he then said to the jury, while leaving no doubt in our minds as to what he meant, might very well have been construed by laymen to mean that they were not to regard the testimony of Cole in his explanation. The instruction was not

of that explicit character which would remove the effect of the illegal evidence. On a retrial the preliminary proofs should form no part of plaintiffs' evidence establishing their loss, and they should be strictly held to independent proof thereof by evidence satisfying the jury as to the extent of it.

What we have said disposes of appellant's first, second, third and fourth assignments of error; they are sustained. There is nothing of merit in the remaining assignments calling for discussion, and they are overruled. The judgment is reversed and a v. f. d. n. is awarded.