# Gratz *v.* Insurance Co. of North America, Appellant.

*Insurance—Fire insurance—Appraisal—Act of June 8, 1915, P. L. 919—Standard policy—Refusal to appoint appraisers—Estoppel.*

1. Although a standard form of policy of insurance is prescribed by statute, nevertheless, on its acceptance by the parties, it becomes a voluntary contract between them which derives its force and efficacy from their consent.

2. Where the terms employed in a standard policy have been in previous use in insurance contracts and have had a judicial construction, it will be assumed that such terms were used in the standard form in the sense in which they were previously used and defined.

3. Prior to the Act of June 8, 1915, P. L. 919, provisions in contracts of insurance as to appraisal were construed as not compul-

sory and binding upon the parties to the contract on the demand of either of them; until acted upon such an agreement was revocable.

4. Refusal to comply with a demand for an appraisal, by an insurance company, does not, under the standard policy prescribed by the Act of 1915, any more than under contracts made prior to the act, work an estoppel against it to contest and establish the loss by competent evidence. The only effect of the refusal is that it enables the insured to forthwith sue on the policy.

5. Statutes are not presumed to make any change in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions.

6. The provisions of the Act of 1915, that "no suit or action .......shall be sustainable unless the claimant shall show compliance with all the requirements of the policy" is of much weight in construing the appraisal policy, inasmuch as it is silent on the subject of the company's being bereft of defenses as to the amount of it.

7. The very provisions of the Act of 1915 negative the idea that it was fixing the rights and obligations of the parties as a matter of substantive law, inasmuch as they provide that the form of the policy and its terms may be changed.

*Insurance—Fire insurance—Proofs of loss—Damage—Evidence.*

8. Proofs of loss have no evidential value in fixing the loss or damage.

Argued December 3, 1924. Appeal, No. 43, Jan. T., 1925, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1921, No. 3485, on verdict for plaintiff, in case of Morris Gratz v. Insurance Company of North America. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Assumpsit on fire insurance policy. Before MCDEVITT, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,392.50. Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Horace Michener Schell,* with him *Joseph S. Conwell,* for appellant.—The provisions of the Act of 1915, P. L. 919, do not make it obligatory on an insurance company to appraise a loss if the assured demands an appraisal: Penn Plate Glass Co. v. Ins. Co., 189 Pa. 255; Wiland v. Ins. Co., 61 Pa. Superior Ct. 409; Giordano v. Ins. Co., 63 Pa. Superior Ct. 233; Fritz v. Assurance Co., 208 Pa. 268; Witmer v. Ins. Co., 68 Pa. Superior Ct. 12.

A paper purporting to be a proof of loss, in its nature self-serving, has not any evidential value except to show compliance with the terms and conditions of a policy contract: Rosenberg v. Ins. Co., 209 Pa. 336; Cole Bros. v. Assurance Co., 188 Pa. 345; Sutton v. Ins. Co., 188 Pa. 380; Cummins v. Ins. Co., 192 Pa. 359.

*James Gay Gordon,* with him *Leopold C. Glass,* for appellee.—The sworn proof of loss was proper evidence of the loss or damage suffered by plaintiff: Dunton v. Ins. Co., 104 Maine 372; Mentz v. Ins. Co., 79 Pa. 478; O'Neil v. Ins. Co., 166 Pa. 72; Kaskey v. Ins. Co., 80 Pa. Superior Ct. 302; Com. v. Vrooman, 164 Pa. 306.

The object of insurance is to give the insured protection against loss, and the courts look with little favor on defenses which deny that protection when the insured has substantially performed his contract or has been betrayed into technical difficulties by any act or omission of the insurer: Bush v. Ins. Co., 222 Pa. 419; Simons v. Ins. Co., 277 Pa. 200.

The rule of construction as to the contract of insurance is, that matters of doubtful interpretation shall be resolved most favorably to the insured in order to indemnify him against the loss sustained: Humphreys v. Benefit Assn., 139 Pa. 264; McGinnis v. Ins. Co., 38 Pa. Superior Ct. 390; Yost v. Ins. Co., 38 Pa. Superior Ct. 595; Montgomery v. Ins. Co., 242 Pa. 86; Freedman v. Fire Assn., 168 Pa. 249; Bush v. Ins. Co., 222 Pa. 419; Lichtheim v. Ins. Co., 9 Pa. Dist. R. 540; Simons v. Ins. Co., 277 Pa. 200.

The only defense stated in the affidavit of defense, was a defense to the whole action, to wit: that the proof of loss was "wilfully, knowingly and deliberately false." The burden of establishing that defense was on defendant, and was not met at the trial: Hoffman v. Ins. Co., 274 Pa. 292; Dietrich v. Davies, 274 Pa. 213; Zoller v. Ins. Co., 272 Pa. 386; Allegro v. Ins. Co., 268 Pa. 333; Goldberg v. Ins. Co., 61 Pa. Superior Ct. 360; Reiter v. Ins. Co., 61 Pa. Superior Ct. 587; Rubenstein v. Ins. Co., 51 Pa. Superior Ct. 447; Wilde v. Trainor, 59 Pa. 439.

OPINION BY MR. JUSTICE SCHAFFER, January 5, 1925:

Plaintiff suffered a loss by fire to his stock of merchandise. It was covered by a policy of insurance in the defendant company, which was in the standard form prescribed by the Act of June 8, 1915, P. L. 919. As he was required to do by the contract, plaintiff executed and delivered to defendant proofs of loss, wherein it was set forth that the damage was equal to the actual cash value of the property insured. In accordance with a provision of the policy, the insured, in writing, demanded an appraisal of his loss, and when the company did not acquiesce in the demand, he brought this suit. At the trial, after offering the policy in evidence, together with his demand for the appraisal, and the proofs of loss (the demand for appraisal and the proofs of loss being met with objection from defendant), plaintiff rested his case and presented a point for binding instructions, which was affirmed by the trial judge. The jury rendered a verdict for plaintiff for the full amount of his claim, upon which judgment was entered; the company has appealed.

The defendant assigns as its reason for not complying with plaintiff's demand for an appraisal that the proofs of loss filed with it so grossly exaggerated the value of the property and the loss as to amount to a fraud sufficient to vitiate the policy, and the suggestion is made that if it had assented to an appraisal, it would have

waived this defense. We are not required, owing to our conclusions on other questions, to determine this one.

A very clear view of the matters submitted for our determination is afforded by the statement of the questions involved by appellant's counsel. We will quote them in the language which they have employed: "(1) Do the provisions of the Act of June 8, 1915, P. L. 919, make it obligatory upon an insurance company to appraise a loss, if the assured demands an appraisement? (2) Has a proof of loss, under any circumstances, any evidential value, other than to establish compliance with the terms of the insurance contract? (3) Was the liability of the defendant established, and, if so, was the amount thereof, proven by competent evidence?" Their contention is that the answers to these questions should be in the negative.

Plaintiff's counsel sum up their position substantially thus: (1) Plaintiff having submitted his sworn proof of loss in compliance with the terms of his contract, and having selected an appraiser and made written demand upon the company to select one, and the latter having declined to do so, or to have the amount of loss or damage determined by the method provided by the contract, the company is estopped from setting up that the loss was less or different from that shown by the sworn proof of loss, which proof is proper and controlling evidence of the extent of the loss and binding upon defendant, unless, on other grounds, it had a defense to the whole action. (2) The only defense stated in the affidavit of defense was to the whole action, that the proof of loss was wilfully, knowingly and deliberately false. The burden of establishing that defense was on defendant and was not met at the trial. (3) As the third section of the Act of June 8, 1915, P. L. 919, 925 (which act established a standard form of policy contract), provides that "Any person, corporation, or company that shall, either as principal or agent, wilfully issue or cause to be issued any policy or contract of fire insurance on property situ-

ated within this Commonwealth, contrary to the provisions of this act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine of not exceeding five hundred dollars"; the contract as made by the parties has the force of a statute, the terms of the contract are the law on the subject, and the statute has provided how damages shall be ascertained and determined.

The whole controversy centers in this provision of the standard policy prescribed by the Act of 1915, P. 924: "In case the insured and this company shall fail to agree as to the amount of loss or damage, each shall, on the written demand of either, select a competent and disinterested appraiser. The appraisers shall first select a competent and disinterested umpire, and, failing for fifteen days to agree upon such umpire, then, on request of the insured or this company, such umpire shall be selected by a judge of a court of record in the county in which the property insured is located. The appraisers shall then appraise the loss and damage, stating separately sound value and loss or damage to each item, and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized, of any two, when filed with this company, shall determine the amount of sound value and loss or damage. Each appraiser shall be paid by the party selecting him, and the expenses of appraisal and umpire shall be paid by the parties equally."

The Act of 1915 is entitled "An Act to provide a standard *form* of policy contract to be issued by fire insurance companies transacting business in Pennsylvania; designating the provisions thereof; exempting certain policies; and prescribing penalties for any violations"; and section 2 of the act provides, "Said standard *form* shall be plainly printed, and no portion thereof shall be in type smaller than the type used in printing the *form* on file in the office of the insurance commissioner and shall be as follows:......"

Broadly stated, it is the contention of appellee's attorneys that the provision as to an appraisal is binding upon both parties to the contract upon the demand of either, that this provision cannot be waived except in the manner provided by the policy and that there has been no waiver; that the failure of the company to comply with the mandate of the law in this requirement of the policy estops it from contesting the value fixed upon the damaged property by the plaintiff, and the proofs of loss, without further evidence as to value, are sufficient, when coupled with the offer of the policy and the proof of the fire, to warrant recovery. This view was very ably presented to us, but we think it not a tenable one.

In our view the basic proposition on which the argument of appellee's counsel proceeds is unsound. By the Act of 1915, the legislature was not laying down rules of law for the construction of insurance contracts, the lawmakers were only prescribing the form of policies which were to be thereafter issued. This is manifest from the title of the act and from its second section heretofore quoted and this is the construction which has been placed on such enactments by the courts in all jurisdictions brought to our attention, with the possible exception of two, Wisconsin (Temple v. Niagara Fire Ins. Co., 109 Wis. 372, 85 N. W. 361) and Minnesota (Heim v. American Alliance Ins. Co., 147 Minn. 283, 180 N. W. 225), hereafter discussed. The conclusions of the various courts throughout the country are thus summed up in one of the standard works on insurance: "Although a standard form of policy is prescribed by statute, nevertheless upon its acceptance by the parties it becomes a voluntary contract between them which derives its force and efficacy from their consent. It constitutes their contract, and it must be construed by the same rules as similar contracts voluntarily entered into. And the fact that the legislature has prescribed a standard form of policy affords no reason for giving to a clause any different construction from that theretofore given by the

courts to all similar contracts made without legislative sanction. So where the terms employed in a standard policy have been in previous use in insurance contracts and have had a judicial construction, it will be assumed that said terms were used in the standard forms in the sense in which they were previously used and defined": 1 Joyce on Insurance, 2d ed., 546-7. The Supreme Judicial Court of Maine, considering this question in Duncan v. Westchester Fire Ins. Co., 104 Me. 372, 71 Atl. 1037, 1039, said: "But the Maine standard policy, though its form is prescribed by statute, is not to be treated as a legislative enactment after it has been accepted by the parties, but as a voluntary contract, which, like any other contract, derives its force and efficacy from the consent of the parties......The fact therefore that the legislature put forward the Maine standard policy as a form for a contract to be executed by the parties affords no reason for giving to the arbitration clause any different construction from that heretofore given by the courts to all similar contracts made with legislative sanction." The same conclusion was reached by the Supreme Court of Minnesota in Kollitz v. Equitable Mutual Fire Ins. Co., 92 Minn. 234, 99 N. W. 892; by the Supreme Court of Oklahoma in Shawnee Mutual Fire Ins. Co. v. School Board, 44 Okla. 3, 143 Pac. 194; by the Supreme Judicial Court of Massachusetts in Reed v. Washington Fire & Marine Ins. Co., 138 Mass. 572; by the Supreme Court of North Dakota in Leisen v. St. Paul Fire & Marine Ins. Co., 20 N. D. 316, 127 N. W. 837; by the Supreme Court of Errors of Connecticut in Chichester v. New Hampshire Fire Ins. Co., 74 Conn. 510, 51 Atl. 545; and by the Supreme Court of North Carolina in Gazzam v. German Union Fire Ins. Co., 155 N. C. 330, 71 S. E. 434.

Neither of the cases largely relied on by the court below and by appellant's counsel in support of the position that under the appraisal clause of the policy the company was required to appoint an appraiser and failing to

do so was estopped from denying the amount of the loss (Temple v. Niagara Fire Ins. Co., 109 Wis. 372, 85 N. W. 361; Heim v. American Alliance Ins. Co., 147 Minn. 283, 180 N. W. 225), is authority for such a proposition as that involved in the case at bar, as neither of these cases involves a ruling as to the appraisal clause. In the first case, the clause under consideration was the rebuilding clause, which was invoked by the insurance companies as permitting them to reconstruct the destroyed building which had been covered by their policies against the claim of the insured to receive the entire amount of the insurance in cash. The court held that the policy being in the standard form prescribed by the legislature of Wisconsin, the clause in the policy permitting the companies to rebuild was part of the statutory law of that state as well as a contract and that other provisions of the laws, providing, in substance, that the amount of the insurance written upon real property which had been wholly destroyed should be taken conclusively to be the true value of the property when insured and the true amount of loss and the measure of damages when destroyed, did not avail as against the right of the companies to exercise the option to rebuild. Heim v. American Alliance Ins. Co. was an action to recover upon a policy insuring the plaintiff against loss of rents by fire. A rider had been attached to the policy, the effect of which was to limit the recovery on the policy to less than the actual loss and less than the amount of the insurance in violation of the terms of the Minnesota statute. Just what the views of the courts of final appeal in these two states would have been on the question we are considering, the binding effect or the revocability of the appraisal clause, we cannot know, as this question was not raised in either of the cases.

The provisions in contracts of insurance as to appraisal have been construed by us as not compulsory and binding upon the parties to the contract on demand of either of them; until acted upon, such an agreement

is revocable (Mentz v. Armenia Ins. Co., 79 Pa. 478; Penn Plate Glass Co. v. Spring Garden Ins. Co., 189 Pa. 255), and by their enactment the legislature did not provide otherwise. In Penn Plate Glass Co. v. Spring Garden Ins. Co., 189 Pa. 255, we held that if a fire insurance company omits or refuses to join in an appraisement provided by the policy, its rights are not prejudiced thereby, because the agreement to appoint appraisers is revocable; and the company is not, by a denial of liability, estopped from requiring that if its liability is to be established, the amount of it shall be proven by competent evidence. In that case, Mr. Justice MITCHELL, speaking for the court, said (p. 260) : "But the court below was of opinion that, by defendant's refusal to join in the appointment of appraisers, coupled with a total denial of liability, defendant was estopped from disputing the amount of the loss as estimated by appraisers appointed by other insurance companies and by plaintiff, ex parte as regards this defendant. This was a serious error. There was no element of estoppel in such action. The policy provides that, in case of disagreement as to the amount of loss, it shall be ascertained by appraisers, and further that no action shall be brought on the policy until after compliance with all its requirements, among which is that relating to appraisers. Such appraisement or the effort to have it would be at the most a condition precedent to an action by the insured, and the failure to have it a ground for a plea in abatement by the company. Refusal to join in the appointment of appraisers, or denial of liability altogether, either or both, would estop the defendant from such a plea, but it could go no further. The provision of the policy in this respect raises a preliminary question for the court in the same manner and with the same limited effect as the analogous question of proofs of loss, which is discussed and determined by our Brother DEAN in Cole v. Fire Assurance Co., 188 Pa. 345. Neither appraisement nor the technically so-called 'proof of loss'

is of itself competent evidence of the fact or amount of loss except as against a party who has made it his own act by joining in it."

When the legislature, therefore, provided in the form of policy that it should contain a clause providing for appraisal, it did so with the knowledge that the agreement to appraise, if not acted upon, was revocable, and therefore it cannot now be maintained that the requirement to do so was a positive mandate of the law, no change in such rule having been made in the act. Statutes are not presumed to make any change in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions: Pettit v. Fretz's Executor, 33 Pa. 118; Keim v. Reading, 32 Pa. Superior Ct. 613; Mindlin v. O'Boyle, 278 Pa. 212. Refusal to comply with a demand for an appraisal by the company, does not now, any more than before the statute, work an estoppel against it to contest and establish the loss by competent evidence. The only effect of the refusal is that it enables the insured to forthwith sue on the policy. While the contract in the form prescribed by the statute provides that "No suit or action...... shall be sustainable......unless the *claimant* shall show compliance with all the requirements of this policy," it is of much weight in construing the clause with which we are dealing, that it is silent on the subject of the company's being bereft of defenses as to the amount of the loss in the event of its failure to acquiesce in an arbitration of the amount of it. We furthermore think that by its very provisions the Act of 1915 negatives the idea that it was fixing the rights and obligations of the parties as a matter of substantive law, because it provides that the form of the policy and its terms may be changed. P. 919: "A company may write upon the margin or across the face of the policy, or print in type not smaller than long primer, upon separate slips or riders to be attached thereto, provisions adding to or modifying those contained in the standard form, and all such slips and

provisions must be signed by the officers or agents of the company so issuing them."

No elaborate discussion of the proposition that the proofs of loss have no evidential value in fixing the loss or damage is required. We have uniformly held that they are not competent proof on this subject: Cole v. Manchester Fire Assur. Co., 188 Pa. 345; Penn Plate Glass Co. v. Spring Garden Ins. Co., 189 Pa. 255; Cummins v. German American Ins. Co., 192 Pa. 359; Rosenberg v. Fireman's Fund Ins. Co., 209 Pa. 336.

The trial judge was in error in giving binding instructions to the jury to find for the plaintiff; in admitting paragraphs from the plaintiff's statement of claim and the answers thereto in the affidavit of defense relating to the failure of the defendant to agree, on demand, to an appraisal; in admitting the proofs of loss as evidence of the value of and damages to the goods covered by the policy; and in admitting evidence as to the demand of the plaintiff for an appraisal; therefore, the first, second, third, fourth and fifth assignments of error are sustained and the judgment is reversed with a new venire.