## Loeffler Estate. No. 2

*Eugene A. Caputo*, for petitioner.

SOHN, J., July 11, 1950.—Thomas A. Loeffler and Louise K. Loeffler are husband and wife. Since 1938 Louise K. Loeffler has been a patient at Torrance State Hospital. On August 2, 1949, upon petition of Thomas A. Loeffler, this court decreed that a tenancy by the entireties in the net proceeds from the sale of real estate be terminated and after the payment of certain claims, there was awarded to Thomas A. Loeffler, the sum of $3,429.02, and to Beaver Trust Company, guardian of the estate of Louise K. Loeffler, the sum of $3,429.02. (See Loeffler Estate No. 1, 73 D. & C. 300.) We have before us the petition of Thomas A. Loeffler praying that the Beaver Trust Company, guardian of the estate of Louise K. Loeffler be permitted and authorized to pay from her estate for her maintenance and care from June 1949 to April 1950 in the amount of $560.48, and thereafter that the guardian

pay the sum of approximately $12 per week for her support.

Thomas A. Loeffler is a dentist. In 1948 he purchased a dental practice at York, Pa., where he is now engaged in the practice of his profession. His wife is an inmate of Torrance State Hospital; a son is an inmate of the Harrisburg State Hospital, and he supports a daughter, who resides with petitioner's sister in Ambridge, Pa.

It is petitioner's contention that his earnings are insufficient to enable him to pay for the support of his wife. He offered in evidence a copy of his income tax return for the year 1949, which shows a gross income of $14,098. On August 2, 1949, he received the sum of $3,429.02 as his share in the severance of the estate by the entireties. In view of these facts, we cannot conclude that petitioner is indigent, and therefore unable to maintain his daughter, and his son and wife, the latter two of whom are patients in State hospitals. In our opinion of August 2, 1949, we referred to the opinion of Judge Waychoff in Commonwealth v. Hoge, 39 D. & C. 564. Counsel for petitioner contends that the conclusion reached in that opinion is not in harmony with the opinion of Mr. Justice Linn in Boles' Estate, 316 Pa. 179, where he said:

"While the obligation declared in section 1 remains, as at common law, a primary obligation of the person cared for, section 3 imposes on others a secondary obligation to contribute, if 'legally able so to do', a phrase perhaps carried into the statute from earlier legislation (section 28, Act of June 13, 1836, P. L. 539), where the duty to contribute was qualified by the words 'being of sufficient ability'—a condition which required an adjudication of that fact by the Quarter Sessions: *Wertz v. Blair Co.*, 66 Pa. 18. The Act of 1915 provides a different forum: *Harnish's Est.*, 268 Pa. 128, 110 A. 761.

"The liability imposed on a father by section 3 is in derogation of the common law and must, therefore, be strictly construed in the light of the presumption that no change in the common law was intended beyond what is expressly stated: *Gratz v. Ins. Co. of North America*, 282 Pa. 224, 234, 127 A. 620. In declaring the common law liability of the lunatic in section 1, and in imposing a new liability on others for the same debt in section 3, the legislative intention was to provide an additional source of payment in the nature of a suretyship, but was not intended to release the lunatic from the primary obligation always resting on him. Unless the estate is reimbursed out of the lunatic's share, the statute will be given an effect which, we think, was neither declared nor intended. The effect of awarding to the lunatic one-sixth of the estate remaining after payment of the claims of the State and city, would be to require the brothers and sisters to contribute toward his support—a duty which is not imposed upon them by the Act of 1915 and does not exist at common law. It is immaterial that the son had no property until the father died, because the son has always been liable whether he had property or not. The orphans' court applies equitable principles, and, having jurisdiction of the fund and of all the parties, has the power by subrogation (*Williamson's App.*, 94 Pa. 231) to decree reimbursement to the father's estate of so much of the son's interest as will repay the amounts awarded to the State and to the city on account of the obligation of the son."

The Act of June 1, 1915, P. L. 661, sec. 1, is as follows:

"Whenever any person is maintained as an inmate of any hospital, home, sanatorium, or other institution of the Commonwealth, in whole or in part at the expense of the Commonwealth, the property or estate

of such person shall be liable for such maintenance, to be paid or recovered as hereinafter provided."

Section 3 of the act provides in part as follows:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided. . . ."

In Boles' Estate, supra, Mr. Justice Linn referred to the liability imposed upon a father. The liability imposed upon a husband stands on an entirely different basis and it has been so construed by the courts on numerous occasions.

In re Hannon, 52 D. & C. 160, presents a situation almost identical with that in the instant case. In that case, Gordon, Jr., P. J., said:

"Mrs. Hannon was admitted to the Norristown State Hospital on January 27, 1943, upon the application of her husband, who thereafter paid the Commonwealth's maintenance charges until January 1st of this year, when he discontinued payments, Mrs. Hannon having acquired the income of $55.00 per month already referred to. In these circumstances, the question arises whether a husband can avoid his undoubted legal duty to support his insane wife, and shift the burden of her maintenance to her separate estate because she has come into possession of enough money to maintain herself. To put the question in another form: Does the legislation, which makes the estate of an insane person liable to the Commonwealth for the cost of his or her maintenance in a State hospital, notwithstanding others may also be liable therefor, so modify an insane wife's primary right to support from her husband as to enable the Commonwealth effectively to deprive her of this substantial incident of marriage by its election

to collect its bill from her rather than from her husband? We think the mere statement of the question suggests its answer." . . .

"And by the fourth section, already quoted, jurisdiction to enforce payment for such maintenance is vested in the court of common pleas of the county of the patient's residence. The manifest purpose of this act is to facilitate the collection of bills for maintaining inmates in State institutions by enabling the Commonwealth to proceed directly against the inmate's estate, in the first instance. It enlarges the sources from which the Commonwealth can get satisfaction of its bill, but does not attempt to alter the existing liability of others therefor. Without such legislation the Commonwealth would be compelled, in the case of a married woman, to look to the husband alone for payment, since at common law a wife is not liable for necessaries purchased by her for herself and family, unless she specially contracts to pay for them: *Clothier v. Wolff*, 66 Pa. Superior Ct. 328; and her possession of an earning capacity, or a separate estate, does not deprive her of the right to her husband's support: *Commonwealth ex rel. v. Shotz*, 130 Pa. Superior Ct. 561; *Waesch's Estate*, 166 Pa. 204. An insane person, however, is incapable of making a contract, and hence without special legislative authority the Commonwealth would have to seek reimbursement for a wife's maintenance from the husband or other responsible relative. The Act of 1915 contains nothing to indicate a legislative intent to do more than make the estate an additional source of security, and to give the Commonwealth an unrestricted election to collect from it or others, according to its convenience. In this respect the insane wife's estate may be said, qua the Commonwealth, to be primarily liable for her maintenance, as was held in *Boles' Estate*, 316 Pa. 179, decided under The Mental Health Act of July 11, 1923, P. L. 998, sec. 503, which regulates the

order in which the Commonwealth may proceed for the collection of its charges as between the inmate, other 'persons liable under existing laws for his support', and counties, poor districts, and municipalities. As between the husband and wife, however, the primary liability of support remains, as always, upon the husband. That liability arises out of the marriage relation, and is among a wife's most important and valuable rights springing from the marriage contract. Were the wife sui juris, she could herself compel support through the Municipal Court, and if she is forced, by her husband's desertion and refusal to support her, to expend her own money for her maintenance she can compel him to reimburse her for such expenditures: *Clark v. Clark*, 17 D. & C. 500."

In Commonwealth v. Ray et al., 55 D. & C. 408, Judge Helfrich said:

"Furthermore, if financial ability exists, the burden to pay for this patient's maintenance rests upon the respondent husband: *Commonwealth ex rel. v. Shannon*, 107 Pa. Superior Ct. 557; *Commonwealth v. Hoge*, 39 D. & C. 564."

In Shaffer Estate, 68 D. & C. 351, 356, Wingerd, P. J., said, in a situation similar to that in the instant case:

"A husband is certainly primarily responsible for the support of his wife and we can see nothing in the act which changes that responsibility as between the husband and the wife. The fourth section gives to the Commonwealth the right to proceed against the inmate's estate in the first instance, if it so desires, and under section 503 of The Mental Health Act of July 11, 1923, P. L. 998, 50 PS §143, primary liability to the Commonwealth seems to be placed on the estate of the inmate. However, as we have stated, all of this has nothing to do with the liability of a husband for his wife's support so far as his wife or his wife's estate

are concerned: *In re Hannon*, 52 D. & C. 160'. In fact, as a wife, who is sui juris, could compel a husband to reimburse her for expenditures made from her own estate for her maintenance (*Clark v. Clark*, 17 D. & C. 500), there is no reason why the guardian of a wife, who is a person of weak mind and an inmate of a State institution, cannot compel a husband to reimburse the estate of the wife in its hands when it has been compelled by the Commonwealth to pay for the wife's maintenance in the State institution, or bring proceedings on behalf of its ward against the husband for support: *In re Hannon*, 52 D. & C. 160."

The opinion in Boles' Estate, supra, is referred to by Mr. Justice Jones in Commonwealth v. Zommick, 362 Pa. 299, at 301, where he said:

"The ruling of the learned trial judge was error. The defendant's liability was clearly established by the undisputed evidence; and the defense interposed was irrelevant and immaterial to the issue. Section 3 of the Act of 1915 provides that 'The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person . . .' The liability so imposed is direct and wholly independent of the inmate's common law liability which Section 1 of the Act declares and continues. The provision of Section 3 was for the protection of the Commonwealth (*Harnish's Estate*, 268 Pa. 128, 131, 110 A. 761) and 'imposed a new liability on others for the same debt' for which the inmate himself is liable, 'the legislative intention (being) to provide an additional source of payment in the nature of a suretyship': *Boles' Estate*, 316 Pa. 179, 182, 173 A. 664. The analogy to suretyship, of course, connotes that, as to the Commonwealth, the liability of the

persons specified in Section 3 is primary. Its enforcement in no wise depends upon the Commonwealth's establishing antecedently that the recipient of the hospital service continues to be indigent. Indeed, the patient's financial position is of no materiality to the enforcement of the liability created by Section 3."

In Hedderick v. Hedderick, 163 Pa. Superior Court 564, 566, Judge Reno referred to the rule and explained the decision in Boles' Estate. His opinion supports the conclusion reached in the other decisions referred to in this opinion, that the husband is primarily responsible for the support and maintenance of his wife, whether or not she is a patient in a State hospital. He said:

"The conclusion is that neither the statute nor decisional law supports appellant's claim to an absolute right to a suspension of alimony while his wife's separate estate is consumed for her maintenance. His application is addressed to the sound legal discretion of the court which entered the decree of alimony, and we can interfere with its exercise only upon a showing of abuse of discretion. The facts of this case do not warrant intervention. . . .

"*Boles' Estate*, 316 Pa. 179, 173 A. 664, upon which appellant relies, throws no light upon the problem here presented. It adjudicates merely the liability to the Commonwealth as between a father and his insane adult son for maintenance in an insane hospital. The case does hold that the lunatic is primarily liable and that others, named in the applicable legislation, are only secondarily liable, an additional source of payment in the nature of a suretyship to which the Commonwealth may look for reimbursement. It might be that in a suit by the Commonwealth the insane wife would be compelled to pay the State; but, as between the parties in this case, the divorce decree continued and prolonged the husband's common-law, primary responsibility for her support and maintenance."

We have concluded in this case that the earnings of petitioner are sufficient to enable him to support his wife in Torrance State Hospital. The statute imposes liability on the estate of the person cared for by the Commonwealth, but it does not operate to release a husband from his primary responsibility to support his wife although she has a separate estate. The courts have consistently so held. We find no opinion to the contrary. Entertaining these views, the petition must be dismissed.

### Order

And now to wit, July 11, 1950, for the reasons set forth in the foregoing opinion, it is ordered, adjudged and decreed that the petition filed at the above number and term be dismissed; costs to be paid by petitioner.