## COMMONWEALTH OF PENNSYLVANIA v. WILLIAM TAPPAN.[1]

April 9, 1943.

No. 33,429.

*Naughtin & Henley* and *Ernest J. Messner,* for appellant.
*John M. Gannon* and *Carl B. Brink,* for respondent.

LORING, JUSTICE.

This is an appeal from a judgment of the district court entered pursuant to an order denying plaintiff's and granting defendant's motion for judgment on the pleadings. For consideration in connection with the motions certain facts were stipulated. In 1906 Martha Tappan, wife of the defendant, was adjudged insane by the probate court of Ramsey county and committed to the State Hospital at St. Peter, Minnesota. In 1912 defendant had her removed to the Allegheny County Home and Hospital in Woodville, Penn-

[1]Reported in 9 N. W. (2d) 18.

sylvania, although he continued to reside in Minnesota. In 1913 the marriage was annulled pursuant to a judgment entered in St. Louis county, Minnesota, which among other things provided that defendant should maintain Martha during her lifetime at the Allegheny hospital or some other suitable place where she would have equally good care. Defendant took Martha to the named hospital, where she remained an inmate for some 26 years, until June 1, 1938, and during that time the hospital remitted monthly statements to defendant which averaged approximately $13 per month and which defendant paid.

Plaintiff alleges that, pursuant to a Pennsylvania statute requiring that commonwealth to pay two dollars per week to any county hospital in Pennsylvania for every indigent insane person confined therein, it did pay to the Allegheny hospital two dollars per week for the care of Martha Tappan for the 26 years she was an inmate there. This totals $2,745.71, which the commonwealth now seeks to recover from defendant under its statute, Act of June 1, 1915, P. L. 661 (Purdon's Pa. St. 1936, Title 71, §§ 1781-1788), which, after providing that the property or estate of insane persons who have been maintained at the expense of the commonwealth shall be liable for such maintenance, provides:

"Section 3 [§ 1783]. The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided."

It is admitted that defendant had no knowledge that the commonwealth was making such contributions to the hospital or that Martha had been certified as "indigent" by the county hospital. He never received any statement from the commonwealth and believed that in paying the monthly statements submitted by the county hospital he was discharging his obligation under the aforementioned Minnesota judgment.

24

■ The commonwealth's claim against this defendant is necessarily founded upon its statute above recited. P. L. 661, § 3, Purdon's Pa. St. 1936, Title 71, § 1783. The construction of this statute was considered in Boles's Estate, 316 Pa. 179, 173 A. 664, where the court held that in placing a secondary liability on the husband, wife, and other relatives of the lunatic for his support, such a statute, being in derogation of the common law, must be strictly construed. At common law there was no liability to care for poor relatives, and it must be presumed that the legislative intent was not to extend this liability beyond what was stated. Again, in considering a similar statute, which antedates that under consideration, a Pennsylvania court held that a brother was not liable for the maintenance of his indigent insane sister for the reason that the statute, while enumerating relatives who would be liable, was silent as to a brother. The court also said that while there might be a moral obligation for support it could not be legally enforced. Commonwealth v. Neese, 15 Pa. Dist. 87, 7 Lack. Jur. 79. It follows that under the interpretation the Pennsylvania courts have given this statute the defendant is not liable if he does not come within one of the classes there enumerated.

■ Defendant was no longer Martha Tappan's "husband" after the annulment decree in 1913. That decree destroyed the marriage relationship so that the parties were no longer husband and wife, and the Pennsylvania statute had no application to him. Such being the case, the commonwealth under its own laws had no remedy against him.

Judgment affirmed.