## Commonwealth v. Rumford

*Donald B. Smith*, for Commonwealth.
*John P. Fullam*, for defendant.

BIESTER, J., January 3, 1950.—On July 11, 1949, the Commonwealth of Pennsylvania, by its attorney,

Donald B. Smith, instituted the above action in assumpsit.

Plaintiff's complaint avers, inter alia, that defendant became the wife of Albert B. Rumford on August 15, 1903, which marriage was afterward dissolved by a decree in divorce granted by the Court of Common Pleas of Bucks County on December 16, 1946; that Albert B. Rumford was committed to the Norristown State Hospital on November 2, 1914, and was continuously an inmate of that institution until at least December 16, 1946; that the cost of caring for and maintaining Albert B. Rumford in the hospital from November 2, 1914, until January 31, 1945, was $6,485.85; that defendant is financially able to make payment of the sum demanded, or at least a portion thereof, and suit is therefore instituted.

This action is instituted by virtue of the provisions of the Act of June 1, 1915, P. L. 661, as amended, 71 PS §1783, which provided, inter alia, as follows:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance. . . ."

On August 1, 1949, defendant, by her counsel, John P. Fullam, filed preliminary objections to the complaint, alleging that the complaint failed to set forth a cause of action against defendant.

The specific reasons assigned are: First, that since the complaint sets forth a decree in divorce, dissolving the bonds of matrimony between defendant and Albert B. Rumford, as of December 16, 1946, defendant is, therefore, not the wife of Albert B. Rumford and not within any class of persons rendered liable to the Commonwealth by virtue of the statute.

Secondly, that the complaint is defective in that it fails to aver that defendant was legally able to pay the sums demanded or any part thereof at any time during which defendant was the wife of Albert B. Rumford.

As we understand the position of defendant it is to the effect that two situations must co-exist at the time suit is instituted. First, that defendant must be the wife of the inmate, and secondly, that she must at that time, that is to say, while she is the wife of the inmate, be able to pay for his maintenance.

In support of her contention that defendant is no longer a wife of the inmate and, therefore, that the suit has no application to her, defendant cites the case of Commonwealth of Pennsylvania v. Tappan, 215 Minn. 22, 9 N. W. (2d) 18.

In that case Martha Tappan, the wife of defendant William Tappan, was, in 1906, adjudged insane by the Probate Court of Ramsey County, Minn., and committed to the State Hospital at St. Peter, Minn. In 1912 defendant had his wife removed to the Allegheny County Home and Hospital in Woodville, Pa., although he continued to reside in Minnesota. In 1913 the marriage was annulled in Minnesota, the judgment of annulment requiring that defendant should maintain his former wife during her lifetime at a suitable hospital. Martha Tappan remained at the hospital for some 26 years during which time defendant paid approximately $13 a month to the hospital.

The Commonwealth of Pennsylvania brought suit in the amount of $2,745.71 to recover a contribution of $2 a week which the Commonwealth was required to contribute toward the maintenance of Martha Tappan for a period of some 26 years. The action was instituted under the Act of 1915 and after very little discussion the court stated:

"Defendant was no longer Martha Tappan's 'husband' after the annulment decree in 1913. That decree destroyed the marriage relationship so that the parties were no longer husband and wife, and the Pennsylvania statute had no application to him. Such being the case, the commonwealth under its own laws had no remedy against him."

It may be noted that for a period of 25 of the 26 years, the period for which the suit was instituted, defendant was no longer the husband of the inmate. It is true that the court made no distinction as between the one year and the balance of the period, but it may also be that because of the very short period involved (and it may have been for less than a year) the court attempted to make no distinction.

It should also be noted that the Tappan case involved an annulment and not a divorce proceeding and if the action were a true annulment proceeding it would, in effect, be a decree or judgment that no valid marriage had ever existed between the parties.

Although we have been unsuccessful in discovering any case decided by a Pennsylvania court which squarely rules the question here involved, we do find a number of cases construing the act of assembly which throw light on its meaning. Reference to these cases indicates they support the following propositions:

Two conditions must be fulfilled before liability attaches, viz., a named relationship to the indigent person, and that the person is legally able to pay: Commonwealth v. Groller, 41 D. & C. 366. Whenever money has been expended for the maintenance of an individual it becomes a debt which must be repaid by those liable therefor by virtue of an express or implied contract. Past maintenance, therefore, should be recovered in an action of assumpsit in the event the person liable is still living: Commonwealth v. Tarras, 89 Pitts. L. J. 285; or by the filing of a claim for

past maintenance with the orphans' court in the event the person liable is deceased: Harnish's Est., 268 Pa. 128. Although the act contains no express provision as to the recovery of maintenance against the estates of persons liable other than the estate of the person maintained in the institution, numerous cases have sustained a right of recovery against the estates of such enumerated persons: Stoner Est., 358 Pa. 252; Brubaker Est., 346 Pa. 339; Boles' Est., 316 Pa. 179; Kimmel's Est., 34 Schuyl. 188. Legally able to pay means financially able to pay: Commonwealth v. Groller, supra; Boles's Est., supra. There is no enforcible obligation unless the person sought to be charged is, in the discretion of the court, financially able to make such compensation without incurring undue personal privation: Commonwealth v. Groller, supra. An action may be instituted against persons legally responsible after the discharge of the inmate: Commonwealth v. Lahovski, 29 Northamp. 373. The statute imposes liability without regard to a continuance of the family relationship or the personal agreements between the parties respecting financial liability: Commonwealth v. Ray et al., 55 D. & C. 408; In re Rosenthal Est., 18 D. & C. 654; Commonwealth ex rel. v. Neff, 29 Dist. R. 1010.

We are convinced from a careful reading of the act of assembly and from various expressions contained in the foregoing and other cases that a semi-contractual liability accrues during the period when a person falls within one of the classifications of the enumerated responsible relatives and at the same time the financial ability to pay exists. It does not follow, however, that suit must be instituted during the period when the responsibility for maintenance accrues, for the coexistence of the prerequisites is sufficient to bring about a fixed semi-contractual obligation. When once the obligation becomes fixed it would appear that suit

may be maintained by the Commonwealth at any time. This is in conformity with Commonwealth v. Lahovski, supra, and the many cases which recognize the liability of the estates of the enumerated responsible relatives.

If the construction of the act requires the Commonwealth to bring suit while the relationship of husband, wife or other responsible relative existed, not only would great hardship be placed upon the Commonwealth but also upon the persons made liable by the act of assembly as such construction would require frequent suits by the Commonwealth against the same individual in the fear that the status of that individual might change by reason of divorce or death.

We conclude, therefore, that the obtaining of a divorce by defendant from the inmate did not expunge the liability that had already accrued to her, although it was effective in terminating her responsibility for the maintenance of the inmate after the procurement of the divorce.

However, it would appear to be the policy of the Commonwealth to enforce liability only in such cases which do not result in undue hardship or personal privation to the person against whom recovery is sought. This would appear to be particularly so in the instant case, or in any case in which the person sought to be charged was not responsible for support of the inmate under the common law. It follows, therefore, that defendant charged should not only have been of financial responsibility during the time she was the wife of the inmate, but also at the time when suit was instituted. It well may be that though in affluent circumstances at the time she was the wife of the inmate she may at this time be of insufficient financial ability to justify an action by the Commonwealth. In the present case the Commonwealth has, in its complaint, alleged that defendant "is" finan-

cially able to make payment of the debt or at least a portion thereof due the Commonwealth. This we believe to be a proper and required allegation.

In addition, however, we believe it incumbent upon the Commonwealth to .allege and prove defendant's financial ability during the period when she was a wife of the inmate.

Now, therefore, to wit, January 3, 1950, the preliminary objections to the complaint are sustained to the extent that the Commonwealth is required to set forth in its complaint the legal or financial ability of defendant while she was a wife of the inmate and the complaint is insufficient in this regard. The Commonwealth shall have the right to amend its pleadings within 20 days from the date of filing this opinion in order that it may conform hereto.