## Chesney's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

The facts appear from the following extracts from the adjudication of

BOLGER, J., auditing judge.—Decedent, who was unmarried at the time of his death, died June 25, 1942, intestate, leaving as appears by the petition for distribution hereto attached, as the persons entitled to his estate under the intestate laws, six daughters, Julia Antipos, Agnes Chesney, Mary Elliott, Christine Rosborough, Anna Chesney and Sophie Alloway. . . .

Claims were presented by the City of Philadelphia in the sum of $375 and by the Commonwealth of Pennsylvania in the sum of $1,660 for the care and maintenance of decedent's daughter, Julia Antipos, at the State Hospital at Norristown. While admitting the correctness of the amounts of the claims, the account-

ant denied the responsibility of the estate for payment on the ground that the husband was living and financially able to respond; and, further, if his financial inability be established, then the claimants were restricted to the distributive share of the daughter. Both objections must be dismissed.

The evidence adduced before me conclusively establishes to my satisfaction the financial irresponsibility of the husband. He was called as a witness and testified he had no property of any kind, no money, securities, or assets; he earns $25 a week, out of which he pays $5 through the Municipal Court toward the support of his two children, pays $3 room rent, buys his food and clothing and also contributes in a limited way to the purchase of clothing and other necessaries for his children, who are wards of the Catholic Bureau. It will be seen that he has very little left for himself.

Section 3 of the Act of June 1, 1915, P. L. 661, specifically imposes liability for the payment of such claims upon certain designated persons as follows:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided."

The liability of such persons under this act has been upheld in the recent case of Brubaker's Estate, 346 Pa. 339, wherein our Supreme Court held (p. 340):

"The Act of June 1, 1915, P. L. 661, imposes liability for the support of an indigent, insane child, in the interest of the Commonwealth, on, inter alia, its parent. The fact that there has been no effort to enforce this liability during the lifetime of the parent does not bar the enforcement of such liability by appropriate proceedings against the parent's estate: *Harnish's*

*Estate*, 268 Pa. 128. The subsequent Act of July 11, 1923, P. L. 998, known as The Mental Health Act, does not take away this right of the Commonwealth to present claims for expenses incurred in the maintenance of indigent, insane persons against their parents' estate even though no effort to enforce such claims was made during the latters' lifetime. Had the attention of the court below been called to our decision in *Harnish's Estate*, supra, it would have undoubtedly so held in the instant case."

In Boles' Estate, 316 Pa. 179, it was held as follows (p. 182):

"In declaring the common law liability of the lunatic in section 1, and in imposing a new liability on others for the same debt in section 3, the legislative intention was to provide an additional source of payment in the nature of a suretyship, but was not intended to release the lunatic from the primary obligation always resting on him."

The Mental Health Act of July 11, 1923, P. L. 998, sec. 503, as amended by the Act of October 11, 1938, P. L. 63, expressly reaffirms the liability of the designated persons in the following language:

"If he have no such property, or is not possessed of sufficient property to defray such expenses, then so much of said expenses as shall be in excess of any amount collected from his said property and paid on account of said expenses shall be paid by such person as is liable under existing laws for his support; and if there be no such person, or if he is financially unable to pay . . . such expenses or the proportion thereof which cannot be collected from the patient, or the person liable for his support, shall be paid by the Commonwealth."

The claim of the city is allowed in full and, after the allowance of the claim of Norman W. Harker, Esq., in the sum of $93, which was admitted by counsel for

both the city and Commonwealth, the balance will be awarded to the Commonwealth on account of its claim.

*Thomas S. Lanard,* for exceptant.

*Joseph T. Coghlan, Jr.,* for City of Philadelphia.

*Harry Polish,* for Commonwealth.

SINKLER, J., May 28, 1943.—To the adjudication exceptions have been filed by one of decedent's daughters who is entitled to take a part of his estate under the intestate laws. Three questions are raised thereby: First, whether the Act of June 1, 1915, P. L. 661, sec. 3, imposes a primary or secondary liability upon the estate of a deceased father for the care of a married daughter, a patient in a State hospital for the insane, who has a living husband. We are all agreed that the estate of the patient, whether living or dead, is primarily liable, and that there exists no difference of degree in the liability of those who are secondarily liable according to the terms of the act, that is, the husband, wife, father, mother, child or children. Therefore, the auditing judge did not err in awarding to the Commonwealth the balance of the fund for distribution remaining after payment of the awards to the City of Philadelphia and to Norman W. Harker, Esq.

The second is whether this court has authority to determine the ability of a husband to support his insane wife upon the audit of the estate of her father. The auditing judge determined the question, and therefore may be taken to have answered it in the affirmative. In fact, he directed the husband to be brought before him for examination, to determine his ability to pay. While we are of the opinion that he correctly did so, this question is not of importance by reason of our decision upon the first question.

The third is whether the question of jurisdiction of the court to determine the foregoing, without objection, may now be raised upon exception. It is our practice to refuse to decide upon exception matters which

have not been brought before the auditing judge. While in this respect, as well as in the second, we are of the opinion that the auditing judge had authority, by reason of our decision upon the first question this is likewise unimportant.

Upon consideration of the record and, as well, the briefs of argument upon exceptions, we are agreed that the auditing judge correctly determined the issues presented to him, and find it unnecessary to recite the facts or to cite authorities, all of which are sufficiently set forth in the adjudication.

The exceptions are dismissed and the adjudication confirmed absolutely.