# In re Hannon

*Conlen, LaBrum & Beechwood,* for guardian.
*Joseph T. Coghlan, Jr.,* for additional defendant.

GORDON, JR., P. J., November 16, 1944.—This is a petition by the Commonwealth for an order directing the guardian of Madeline Orndorff Hannon, the above-named weak-minded person, to pay out of his ward's estate the cost of maintaining her at the Norristown State Hospital from January 1, 1944, to date, and also to pay the Commonwealth's charges for her future maintenance at the rate of $25 per month. The ward's estate produces a small income, which, with accumulations, will be sufficient to pay the orders asked for. The guardian's answer denied primary liability of the estate for the Commonwealth's claim, contending that it should first proceed against the ward's husband, Robert O. Hannon, and can recover from the estate only after it fails to collect its bill from him. The guardian also procured a rule against the husband to show cause why he should not be made a party respondent to the proceedings. This rule we made absolute at the argument, and the case is now before us, with the Commonwealth as petitioner for an order against the guardian, on the one side, and, on the other, the guardian as respondent and the husband as an additional respondent against whom the guardian asks that the order sought by the Commonwealth be made, or, alternatively, that the estate be subrogated to the Commonwealth's rights against the husband, and that he be ordered to recoup to the estate such sums as it is compelled to pay the Commonwealth upon its claim.

Although the husband did not press his objection to being brought into the proceeding as a party respondent, reserving his right to contest the guardian's claim upon its merits, we think the rule to join him was properly made absolute. The contention that a guardianship is not a judicial proceeding, and hence that we have no jurisdiction at this time to make an order

against the husband, is without merit. While it has been held that in guardianship matters a court acts administratively and not judicially, the Commonwealth's petition was clearly a proceeding to establish and recover a claim, and, in acting upon it, we perform a strictly judicial function. Section 4 of the Act of June 1, 1915, P. L. 661, as amended by section 2 of the Act of April 25, 1929, P. L. 704, 71 PS §1784, under which the petition was filed, gives the court of common pleas of the county of residence of an inmate of a State-owned mental hospital jurisdiction to order payment of the Commonwealth's charges for his maintenance by the inmate's estate, or by such other person as may be legally liable therefor. The section reads:

"The court of common pleas of the county of the residence of any inmate of a State-owned mental hospital . . . wherein said inmate is maintained . . . shall, upon the application of the Department of Justice, acting on behalf of the Department of Revenue, make an order for the payment of maintenance to the Commonwealth, upon the . . . guardian, or other person who has charge of the estate of any such inmate, or against the husband, wife, father, mother, child, or children of any person so maintained; and any order made against the husband . . . shall be in such amount as the court, in its discretion, deems proper, taking into consideration their ability to pay for said maintenance . . ."

The enforcement of the Commonwealth's rights under this section is not a mere administrative act. It involves the adjudication of a legal liability, and the Commonwealth's petition could have been filed separately from the guardianship proceeding. The fact that, as a matter of convenience, it was filed and docketed to the same term and number as the guardianship in no way affects its fundamental nature as a statutory action for the recovery of a claim for medical and subsistence necessaries furnished to the inmate by

the Commonwealth, which could have proceeded under the act against either the husband or the estate. It having elected to proceed against the estate, the husband can be brought in for the purpose of enforcing whatever rights over against him the wife's estate may have because of his failure and refusal to support her—a duty which, as between them, rests primarily upon him; such a liability over being enforcible, under our Pa. R. C. P. 2251-2275, by his joinder as an additional defendant in the Commonwealth's action.

Mrs. Hannon was admitted to the Norristown State Hospital on January 27, 1943, upon the application of her husband, who thereafter paid the Commonwealth's maintenance charges until January 1st of this year, when he discontinued payments, Mrs. Hannon having acquired the income of $55 per month already referred to. In these circumstances, the question arises whether a husband can avoid his undoubted legal duty to support his insane wife, and shift the burden of her maintenance to her separate estate because she has come into possession of enough money to maintain herself. To put the question in another form: Does the legislation, which makes the estate of an insane person liable to the Commonwealth for the cost of his or her maintenance in a State hospital, notwithstanding others may also be liable therefor, so modify an insane wife's primary right to support from her husband as to enable the Commonwealth effectively to deprive her of this substantial incident of marriage by its election to collect its bill from her rather than from her husband? We think the mere statement of the question suggests its answer.

The first section of the Act of 1915, supra, upon which the Commonwealth's petition is based, provides:

". . . whenever any person is maintained as an inmate of any hospital, home, sanatorium, or other institution of the Commonwealth, in whole or in part at the

expense of the Commonwealth, the property or estate of such person shall be liable for such maintenance, to be paid or recovered as hereinafter provided."

By the third section of the same act:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided."

And by the fourth section, already quoted, jurisdiction to enforce payment for such maintenance is vested in the court of common pleas of the county of the patient's residence. The manifest purpose of this act is to facilitate the collection of bills for maintaining inmates in State institutions by enabling the Commonwealth to proceed directly against the inmate's estate, in the first instance. It enlarges the sources from which the Commonwealth can get satisfaction of its bill, but does not attempt to alter the existing liability of others therefor. Without such legislation the Commonwealth would be compelled, in the case of a married woman, to look to the husband alone for payment, since at common law a wife is not liable for necessaries purchased by her for herself and family, unless she specially contracts to pay for them: Clothier v. Wolff, 66 Pa. Superior Ct. 328; and her possession of an earning capacity, or a separate estate, does not deprive her of the right to her husband's support: Commonwealth ex rel. v. Shotz, 130 Pa. Superior Ct. 561; Waesch's Estate, 166 Pa. 204. An insane person, however, is incapable of making a contract, and hence without special legislative authority the Commonwealth would have to seek reimbursement for a wife's maintenance from the husband or other responsible relative. The Act of 1915 contains nothing to indicate a legislative intent to do more than make the estate an

additional source of security, and to give the Commonwealth an unrestricted election to collect from it or others, according to its convenience. In this respect the insane wife's estate may be said, qua the Commonwealth, to be primarily liable for her maintenance, as was held in Boles' Estate, 316 Pa. 179, decided under The Mental Health Act of July 11, 1923, P. L. 998, sec. 503, which regulates the order in which the Commonwealth may proceed for the collection of its charges as between the inmate, other "persons liable under existing laws for his support", and counties, poor districts, and municipalities. As between the husband and wife, however, the primary liability of support remains, as always, upon the husband. That liability arises out of the marriage relation, and is among a wife's most important and valuable rights springing from the marriage contract. Were the wife sui juris, she could herself compel support through the Municipal Court, and if she is forced, by her husband's desertion and refusal to support her, to expend her own money for her maintenance she can compel him to reimburse her for such expenditures: Clark v. Clark, 17 D. & C. 500. In De Brauwere v. DeBrauwere, 203 N. Y. 460, a deserted wife sought to recover from her husband moneys spent by her for the maintenance of herself and children, and in affirming the decision of the lower court upholding her right to recover in such circumstances the Court of Appeals of New York, speaking through Bartlett, J., said (p. 463) :

"The learned judge who tried the case at Special Term was inclined to think that the plaintiff's right to recover should be sustained upon the doctrine of subrogation, the wife being subrogated to the rights of the persons who furnished the necessaries for herself and the children and whom she has paid therefor. We prefer to place his liability on a different ground. The husband was unquestionably under a legal obligation to provide his wife and children with the necessaries of

life suitable to their condition. This liability would have been enforcible by the wife in her own behalf and in behalf of her infant children were it not for her disability at common law to sue her husband. That disability having been removed, a wife who has applied her separate estate to the purpose of an obligation resting primarily upon her husband may now recover from him the reasonable amounts which she has thus expended out of her separate estate in discharge of his obligation. In other words, under the common law such a claim as that in suit was not enforcible, because a married woman was incapable of owning any separate estate and likewise incapable of maintaining an action at law against her husband. These obstacles have been removed by placing a married woman on the same footing with a woman who is unmarried in respect to her property rights, and by permitting her to enforce such rights in the courts against her husband no less than against strangers. The plainest principles of justice require that a wife should have some adequate legal redress upon such a state of facts as that set forth in this complaint, and the beneficial character of our legislation removing the former disabilities of married women could not be evidenced more forcibly than it is in its application to the present case."

In that case the wife was sui juris, and was permitted to recover for the reasons so forcefully stated in the opinion quoted. Here, the wife is an incompetent and a ward of the court. Her separate estate is about to be depleted by the amount for which her husband is also liable, and which it will be compelled to pay the Commonwealth only because of his wrongful refusal to perform his plain duty to her. His liability to indemnify her for such a breach of duty is clear. A wife's right to support is as substantial, and should be as zealously preserved and enforced by her guardian for her benefit, as any other property right she may possess. Common prudence requires a guardian, in conserving

his ward's estate, to compel her defaulting husband to discharge his duty to her, so that, if he should hereafter suffer financial misfortune or die before her without leaving an estate, a present depletion of her separate estate by unnecessary expenditures for her maintenance shall not leave her without adequate means to support herself. To take such a risk would be equivalent to giving away a valuable right and, while a sane wife may do as she pleases with her own property, the faithful conservator of an incompetent's estate will not abandon any of its assets. This is especially so when, as here, the husband himself placed her in the hospital, and now refuses either to maintain her there or to support her elsewhere, thus creating by his own default the very debt which her estate is compelled to pay. For these reasons we are of opinion that the Commonwealth is entitled to an order upon the guardian to pay the accrued costs of maintaining Mrs. Hannon at the Norristown State Hospital from January 1, 1944, to date, and that the guardian in turn is entitled to an order upon the additional respondent, Robert O. Hannon, for the same amount, to wit, $220.10, to reimburse the estate for the moneys thus expended for his wife's past maintenance at the hospital.

With respect to the costs of her future maintenance, a somewhat different question is presented. The Commonwealth is, of course, entitled to an order upon the guardian for the payment out of the estate of a sum averaging $25 per month so long as the ward remains a patient at the hospital; and, under the principles already discussed, the guardian will be entitled to reimbursement from the husband for such payments as they are made. This, however, would involve the bringing of successive proceedings against the husband to recover the moneys so paid, if he does not himself perform his duty to support his wife. We see no reason why such a cumbersome circumlocution should have to be reverted to in order to secure the payment of the

Commonwealth's future bills by the husband. There can be no question of the reasonableness of the Commonwealth's charges. They amount to less than one dollar a day for her maintenance and medical care, and there has been no suggestion that the husband, who paid this modest sum until the first of January of this year, is financially unable to continue to do so. We think, therefore, that it would be better for the guardian, enforcing the right of his ward to support, to apply to the Municipal Court for a regular and permanent order of support, which will be measured, at least, by what the estate will be required to pay the Commonwealth. The estate should not be compelled to pay in the first instance, and thus be subjected to the delays and risks of repeated suits against the husband. The obligation to support the wife exists, regardless of her malady or the place where she happens to be; and her guardian is entitled to receive, and expend for her benefit, the regular support to which she is entitled as a wife. In this way, payment of the Commonwealth's bills will be regularly and properly provided without the guardian at any time having to resort to the wife's separate estate for that purpose. As to future maintenance costs, therefore, the Commonwealth is entitled to an order upon the guardian for the monthly payments requested by it, and the guardian is directed to take immediate and appropriate action in the Municipal Court to enforce his ward's right to support from her husband. Accordingly, we now enter the following order in the case.

*Order*

And now, to wit, November 16, 1944, this case having come on to be heard, it is ordered, adjudged, and decreed:

1. Lewis Weinstock, Esq., guardian of the estate of the above-named Madeline Orndorff Hannon, a weak-minded person, is ordered and directed to pay to the Commonwealth of Pennsylvania for her support

and maintenance in Norristown State Hospital from January 1, 1944, to September 30, 1944, the sum of $220.10; and further, to pay to the said Commonwealth for the said ward's future maintenance in Norristown State Hospital such sums as may, from time to time, become due and payable to the Commonwealth as and when bills therefor are presented to him, such future payments not to exceed the average sum of $25 per month without further order of the court.

2. Robert O. Hannon, the additional respondent, is ordered and directed forthwith to pay, reimburse, and recoup to the said guardian of the estate of his wife, the said Madeline Orndorff Hannon, the amount which said guardian is hereinabove directed to pay to the Commonwealth for her past maintenance and support, to wit, the sum of $220.10.

3. Said guardian is further ordered and directed to take immediate and appropriate action against the said Robert O. Hannon, husband of the said Madeline Orndorff Hannon in the Municipal Court of Philadelphia to secure on behalf of his said ward a suitable and proper order for her support.