### Commonwealth v. Clemson

*John J. Schatt*, for Commonwealth.
*Lewis F. Adler*, for defendant.

SOHN, J., November 19, 1951.—In this case the Commonwealth of Pennsylvania, by complaint filed in assumpsit, avers that defendant is indebted to it in the sum of $8,936.16. The suit is based on a claim to recover the amount expended by the Commonwealth for the maintenance of Margaret Clemson, daughter of Emma B. Clemson, defendant, in the Pennhurst State School, a mental institution, during the period from June 3, 1914, to February 28, 1949. The daughter is described in the complaint as having no personal or real estate and her father is dead.

To the complaint defendant filed preliminary objections and moved for judgment on the pleadings, pursuant to Rule 1017(*b*)4 of the Pennsylvania Rules of Civil Procedure. The basis of the objections as originally filed is that although the complaint set forth that defendant is the owner in fee simple of certain unencumbered real estate in the Borough of Steelton, it fails to aver the value of the property and the financial ability of defendant to pay for the support of her daughter. By stipulation later filed of record it was agreed by counsel that defendant's property is unencumbered and has a market value of $10,000, and that the defendant by reason of her age and physical condition is unable to work and has no income whatsoever.

The acts of assembly under which the suit is brought are the Act of June 1, 1915, P. L. 661, sec. 3, and the Act of May 10, 1921, P. L. 438, sec. 2 (71 PS §1783). It is provided in part as follows:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or other institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as hereinafter provided. . . ."

The liability is a statutory one, and the statute must be strictly construed: Boles' Estate, 316 Pa. 179, 182, 173 Atl. 664.

"The liability imposed on a father by section 3 is in derogation of the common law and must, therefore, be strictly construed in the light of the presumption that no change in the common law was intended beyond what is expressly stated . . . In declaring the common law liability of the lunatic in section 1, and in imposing a new liability on others for the same debt in section 3, the legislative intention was to provide an additional source of payment in the nature of a suretyship."

The phrase "as hereinafter provided" found in section 3 has been construed not to require a prior adjudication of liability for support under section 4 of the Act of 1915, P. L. 661, sec. 4, as amended: Harnish's Estate, 268 Pa. 128; Geisler Estate, 76 Pa. Superior Ct. 560. Section 4 of the act deals with the procedure of obtaining a support order for future maintenance and care of an inmate of a public institution. However, it has been decided that a recovery is permitted under the statutory liability imposed by section 3 for the amounts expended by the Commonwealth for past maintenance and care, even though a support order has never been obtained under section 4: Boles' Estate, supra; Erny's Estate, 337 Pa. 542; Stoner Estate, 358 Pa. 252.

Under section 3 of the statute, two conditions precedent must be satisfied before there is a statutory lia-

bility; first, there must be the proper relationship to the indigent inmate; second, the relative must be "legally able so to do" (to pay).

The question for decision by this court is whether, as a matter of law, the ownership in fee simple of unencumbered realty valued at $10,000 by a parent, who is unable to work by reason of age and physical condition and who has no source of income, constitutes legal ability to pay within the meaning of section 3.

The phrase "legally able to pay" has been construed by the courts to mean financially able to pay, taking into consideration their ability to pay from all the surrounding circumstances: Commonwealth v. Groller, 41 D. & C. 366; Commonwealth v. Stewart, 59 York 132; Commonwealth v. Tarras, 89 Pitts. L. J. 285; Commonwealth v. Schmidt et ux., 70 D. & C. 335, Commonwealth v. Morton, 68 D. & C. 1.

In Commonwealth v. Groller, 41 D. & C. 366, p. 370, it was said:

"The purpose of the condition that a relative shall be 'legally able to pay' is that the act shall do justice to the Commonwealth, but shall not work oppression and that there is no virtue in pauperizing the relative in relief of one already indigent."

The rationale of such liability as is imposed by section 3 of the act is that it is more fair that the stated relatives of an indigent inmate should bear the expense of maintenance and care of the indigent inmate than that the people of the Commonwealth as a whole should bear the expense of maintenance and care. However, the act attempts to be fair by providing that the liability shall fall on such relatives only if they are legally able to pay.

In the instant case, defendant is the owner of unencumbered realty valued at $10,000, in which she resides. She is aged and has no income. The Commonwealth's claim is for $8,936.16. Counsel for the Com-

monwealth in his brief has stated that in the event it should be found that defendant has the ability to pay, in view of her ownership of real property valued at $10,000 it would be willing to stipulate that no execution would be issued against defendant's property until after her death. This was the solution found by Judge Flood of a like difficulty in Commonwealth v. Morton, 68 D. & C. 1. But to enter judgment against her now in a claim which almost equals the value of her real estate would be tantamount to pauperizing her. As is said in Commonwealth v. Groller, supra:

"The purpose of the condition that a relative shall be 'legally able to pay' is that the act shall do justice to the Commonwealth, but shall not work oppression and that there is no virtue in pauperizing the relative in relief of one already indigent."

It is hard to see how the postponing of any execution until defendant's death would do anything more than to permit her to live in her home until death. In case of need or emergency, it is unlikely that she could borrow anything on the credit of her property if it were already encumbered by a judgment for the amount of the Commonwealth's claim. At her death, the Commonwealth can present its claim in the orphans' court against the estate of defendant. See Erny's Estate, supra, as well as Stoner Estate, 358 Pa. 252. Moreover, ability to pay refers not only to one's income but also to one's capital assets, and it is as possible to pauperize a defendant by taking the value of nearly all his capital, when he is without earning power, as it is by taking from him nearly all his earnings when he is without capital: Krall's Estate, 47 D. & C. 295. The legislature has expressly negatived any liability as to those who are not "legally able to pay."

In view of what we have said, we feel that defendant at the present time is not "legally able to pay" the

claim of the Commonwealth and that, therefore, she is not liable for its payment.

And now, to wit, November 19, 1951, the preliminary objections filed by defendant are sustained and judgment is entered in her favor.