## Liberty Bank and Trust Co., etc., v. Commonwealth et al.

*E. V. Schantz* and *P. M. Eyster*, for plaintiff.

*F. J. Gildner, A. Shaffer* and *J. F. Stine, Jr.*, for defendants.

HENNINGER, P. J., December 1, 1952.—This action for a declaratory judgment was brought by the guardian of Mary Petri, an incompetent, against her husband, Andrew G. Petri, her three children, the Metzgers, and against the Commonwealth of Pennsylvania, which is maintaining her at the Allentown State Hospital. The purpose of the action is to determine the liability of the several parties plaintiff and defendant for the the support of Mary Petri, the liability of their several estates and, still more important, the order of their liability.

So far as the estates of the parties are concerned, Mary Petri has a small personal estate and a parcel of real estate in her own name; she and her husband own real estate as tenants by the entireties and the husband owns real estate in his own name. The Commonwealth of Pennsylvania has instituted suit against Mary Petri and Andrew G. Petri for $2,283.28 for her maintenance at the Allentown State Hospital from April 12, 1947, to March 31, 1952, less payments heretofore made on account by Andrew G. Petri.

There is no difficulty in deciding that all individual parties defendant as well as the estate of Mary Petri are responsible for her support, for the acts hereinafter recited clearly impose that liability, even where it may not have already existed under the common law. The only problem is whether the Commonwealth must exhaust one source of support before it looks to another and whether, if it collect from one party liable,

that party has rights of subrogation or recoupment against another.

Up to June 12, 1951, when the Mental Health Act of June 12, 1951, P. L. 533, 50 PS §§1071 to 1622, inclusive, became effective, the applicable laws were the Act of June 1, 1915, P. L. 661, 71 PS §§ 1781 to 1788, inclusive, relating generally to persons receiving State support, and the Mental Health Act of July 11, 1923, P. L. 998, 50 PS §§1 to 213, inclusive, relating specifically to the support of patients in State mental hospitals. The Mental Health Act of 1923, supra, was repealed absolutely and the Act of 1915, supra, insofar as it is inconsistent with the provisions of the Mental Health Act of 1951, supra, by section 1001 of the last named act, 50 PS §1621. Only a small part of the amount claimed by the Commonwealth of Pennsylvania was incurred while the Act of 1951, supra, was in force.

Section 1 of the Act of June 1, 1915, P. L. 661, supra, 71 PS §1781, provides that the estate of a person maintained in an institution at the expense of the Commonwealth shall be liable for his maintenance. Section 3 of the act, 71 PS §1783, imposes liability upon the husband, wife, father, mother, child or children of such person, if legally able to do so and further provides for payment out of property held by entireties. Neither section provides for priority of liability excepting that section 3 provides that property held by the entireties shall not be subjected to liability until the patient's private estate shall have been exhausted.

The applicable provision in the Mental Health Act of 1923, supra, is section 503 thereof, 50 PS §143, which, as amended by section 1 of the Act of Special Session of 1938, P. L. 63, reads as follows:

"Whenever any mental patient is admitted, whether by order of a court or judge, or in any other manner

authorized by the provisions of this act, to any mental hospital maintained wholly or in part by the Commonwealth, the cost of care and maintenance, including clothing, of such patient in such hospital shall be defrayed from the real or personal property of such patient; and this liability may be enforced by writ of fieri facias, venditioni exponas, or attachment execution, if he have any such property. If he have no such property, or is not possessed of sufficient property to defray such expenses, then so much of said expenses as shall be in excess of any amount collected from his said property and paid on account of said expenses shall be paid by such person as is liable under existing laws for his support; and if there be no such person, or if he is financially unable to pay such expenses or any proportion thereof, then such expenses or the proportion thereof which cannot be collected from the patient, or the person liable for his support, shall be paid by the Commonwealth."

The Mental Health Act of June 12, 1951, supra, sec. 701, 50 PS §1361, provides as follows:

"Except as otherwise specifically provided in this act, liability for all costs of care of any patient in any institution is hereby imposed, in the following order, against—

"(1) The patient's real and personal property;

"(2) The persons liable for the patient's support;

"(3) The Commonwealth or, in the case of an inebriate, the county or institution district in which he resides."

The significant words in section 701 of the Mental Health Act of 1951, supra, are "in the following order". Counsel for the husband and children contend that they mean that there is no liability on the persons liable for a patient's support unless the patient's estate has been exhausted. They cite in further support of their contention Boles' Estate, 316 Pa. 179.

So far as the Commonwealth of Pennsylvania is concerned, the argument is academic. Since it is the last in order and has already provided for the care and maintenance of the patient, all persons and estates liable for her support are answerable to it and it is not bound by any priorities between parties: Commonwealth v. Zommick, 362 Pa. 299, 301; Scheirer Estate, 75 D. & C. 64, 66.

Nor, so far as the Commonwealth is concerned, does Boles' Estate, supra, furnish any comfort to the father or children. Boles' Estate states (p. 182) that the liability of relations is in the nature of a suretyship, which, as pointed out in Commonwealth v. Zommick, supra, constitutes a primary liability.

This declaratory judgment, however, is not only between the Commonwealth and the parties, but also between the parties themselves.

When the Zommick case and the Scheirer case were decided, the Mental Health Act of 1923, supra, was in force, whose language was much clearer than that of the Act of 1951, supra. It spelled out clearly that the liability of relatives arose after exhaustion of the patient's private estate. The same is true of Hedderick v. Hedderick, 163 Pa. Superior Ct. 564, and while the Act of 1923, supra, is not mentioned in any of these cases, we must assume that the learned courts were aware of its existence and rendered their decisions in spite of its restrictive language.

Boles' Estate, supra, is not based upon any of the principles here discussed. As pointed out in Scheirer Estate, supra (p. 66), in Boles' Estate there was a marshalling of assets upon equitable principles and the court held, therefore, that it was inequitable to charge an adult son's support in a State hospital to the father's general estate, rather than to the adult son's share in that estate, at the expense of other children, simply to preserve the son's share for future mainte-

nance, for which the father's estate could not be held.

Perhaps a greater significance of Boles' Estate for this case is that the Boles' Estate decision was partly based upon the court's opinion that imposition of liability for support of an adult son was in derogation of the common law. In this case we are concerned with the *common-law* liability of a husband for the support of his wife: Commonwealth v. Hoge, 39 D. & C. 564.

The words "in the following order" are further weakened by the use of the same words in the very next section (section 702, 50 PS §1362) of the same act, imposing liability for the cost of commitment. That section places liability "in the following order": (a) On the county: (b) on the estate, and (c) on the relatives, and then provides that the county may recover from the estate and the relatives. The words "in the following order" in section 702, clearly mean the order of payment and not the order of liability. Since in this case, all interested parties are joined, we are interested in the order of liability and not in the order of payment.

Both provisions seem to have been written for the benefit of the Commonwealth. Section 701 puts first accessible property, then claims against individuals; section 702 puts first a municipality, solvent and easily reached for reimbursement if the institution has been compelled to expend moneys for which others are responsible.

The real question is, then, whether the Mental Health Act of 1951, supra, has subordinated the unquestioned common-law primary and absolute liability of the husband for his wife's support to the exhaustion of her private estate.

We must bear in mind that section 701 of the Mental Health Act of 1951, supra, applies solely to patients in State institutions. We cannot believe that it was the intention of the State legislature to retain the common-

law liability of the husband for the support of a wife, if she is sane or if she is insane living at large or if she is insane and maintained in a private institution and to relieve him of such primary liability by the fortuitous circumstance that she is a patient in a State institution. We are convinced that the act was passed in the interests of the Commonwealth and not for the relief of husbands.

We find then that this act is not in derogation of the common law, since it does not seek to change the general common-law liability of the husband to support his wife, but merely sets up machinery to protect the Commonwealth in recoupment for support of patients in State institutions. We need not then discuss the change in the law since the decision in the Boles' Estate, supra, that acts of assembly in derogation of the common law need no longer be strictly construed. See Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58, 46 PS §558.

That the husband's liability for the support of his wife is not discharged or suspended by her possession of property has been frequently decided: Waesch's Estate, 166 Pa. 204, 205; Commonwealth ex rel. Shotz v. Shotz, 130 Pa. Superior Ct. 561, 564. That provisions for the support of patients in State institutions were not intended to affect the husband's primary liability for support of his wife was discussed by Judge Gordon in In re Hannon, 52 D. & C. 160, in which, despite the language of the Act of 1923, supra, he held (p. 165) the husband primarily liable for the wife's support. See also Shaffer Estate, 68 D. & C. 351, 356; Loeffler Estate (No. 2), 74 D. & C. 205, 210.

It is to be further noted that while in Hedderick v. Hedderick, supra, there is no discussion of the Act of 1923, supra, Judge Reno held that the husband's liability for his wife's support (in the form of alimony) was not affected by her possession of a private

estate consisting of the proceeds of partition of a tenancy by the entireties.

The cases of Arnold's Estate, 253 Pa. 517, and In re Hoffman, etc., 258 Pa. 343, cited by the husband, Andrew G. Petri, stand only for the point that a patient's estate is liable for his maintenance in a State institution. They have no reference to priority of liability.

When we come to the liability of the children for their mother's support, we find that the Mental Health Act of 1951, supra, does not define the persons liable for support. For that we must revert to the Act of 1915, supra (71 PS §1783), whose provision naming, inter alia, the husband and child or children is not inconsistent with the Mental Health Act of 1951, supra, and therefore was not repealed by its repealing clause.

We find then that the liability of a husband for the support of his wife is a common-law liability, absolute and primary, that there is a liability on the wife to pay for her maintenance out of her separate estate for any amount that cannot be collected from her husband by the institution maintaining her and that the children, if legally able to do so, are liable for the support of their mother if she have no husband or estate able or sufficient to maintain her and that the Commonwealth is not bound by any order or subordination in liability, but may compel the parties to work out their own equities.

Now, December 1, 1952, the court enters the following declaratory judgment or decree upon the facts set forth in plaintiff's petition, no answer having been filed thereto:

1. Andrew G. Petri, being the husband of Mary Petri, a duly adjudged incompetent, is primarily and absolutely liable for the support and maintenance of the incompetent;

2. The principal and interest of the personal and real estate of the incompetent is liable to expenditure for the support of the incompetent, subject to the prior liability of her husband for her support;

3. The children of the incompetent are liable for her support, if legally able to do so, provided her husband's and her resources are insufficient for her care and maintenance;

4. The Commonwealth of Pennsylvania is not bound by any order of liability in seeking recovery from any person or property liable for the incompetent's support, but may leave the matter of recoupment and subrogation to the person or estate from which it has recovered its outlay for support of the incompetent.