## Andrews Estate

*Snyder & Bent,* for accountant.

*Sidney Chait,* for Commonwealth of Pennsylvania.

*Edward L. Rosen,* assistant city solicitor, for *Abraham L. Freedman,* city solicitor, for City of Philadelphia.

LEFEVER, J., June 24, 1954.—This trust arose under the fifth item of the will of Albert W. Andrews, who died October 1, 1910, whereby he gave his residuary estate in trust and directed that the income therefrom be paid to his wife, Anna Clara Andrews, until her death or remarriage, and that the principal be paid on her death or remarriage per stirpes to his then living issue.

The fund accounted for was awarded to the accountant, Provident Trust Company of Philadelphia, substituted trustee, for the purposes of the trust, by adjudication of Sinkler, P. J., dated February 10, 1949, sur the first trustee's account.

The account is filed because of the death of Anna Clara Andrews, life tenant, which occurred September

1, 1953, leaving then living issue of decedent whose names appear in paragraph (e) of the statement of proposed distribution.

The trust has terminated in whole.

Edward W. Andrews, one of the remaindermen, is an alleged incompetent. He has been a patient at Philadelphia State Hospital since November 3, 1930, and in all probability will continue to be a charge of the Commonwealth until his death. (See report of Dr. Eugene L. Sielke, superintendent of the hospital, which is annexed hereto). Subsequent to the audit, Frank W. Melvin, Esq., was appointed trustee ad litem for Edward W. Andrews, pursuant to section 601(5) of the Orphans' Court Act of 1951, since Edward W. Andrews had no guardian.

All parties having any interest, vested or contingent, are stated to have notice of the audit. Notice in the case of Edward W. Andrews was given to the Commonwealth.

At the audit, Sidney Chait, Esq., appearing for David D. Goff, Esq., for the Commonwealth, presented the Commonwealth's claim in the amount of $7,350.98, for the care and maintenance of Edward W. Andrews at Philadelphia State Hospital from November 3, 1930 (when he was admitted) to January 31, 1954. The City of Philadelphia also presented a claim in the sum of $2,466.18 for medical care and treatment of Edward W. Andrews at Philadelphia General Hospital from October 8, 1930 to November 3, 1930, and covering periods of time when he was a patient at Philadelphia Hospital for Mental Diseases and including the city's share of burden of maintenance of Edward at Philadelphia State Hospital, as to which see appearance slip of counsel for City of Philadelphia.

In the instant estate, Edward W. Andrews is entitled to a one-fourth interest in remainder which is now distributable and which amounts to approximately

$2,800. At the audit, it was requested by counsel for the Commonwealth that his distributive share in this estate, being far less than the claims of the Commonwealth and city, be awarded directly to the Commonwealth and city in proportion to their respective claims.

As a general proposition of law creditors of distributees may be recognized in the orphans' court only if their claims are reduced to judgment and attachment issued, and distribution will not be suspended pending suit: Carter's Appeal, 10 Pa. 144; see Geiner's Estate, 2 W. N. C. 292; Robinson's Estate, 12 Phila. 170; Ottinger's Estate, 4 Dist. R. 711; Brown's Estate, 32 D. & C. 403.

But in the instant case the Commonwealth is not a general creditor of the distributee, nor for that matter, as yet, a judgment creditor. It is a statutory preferred creditor, at least in respect to the property of a living mental patient and its claim can be asserted concerning after-acquired property of the living inmate which may be in the possession of "the trustee, committee, guardian, or other person who has charge of the estate of any such inmate . . .". Cf. Frew's Estate, 340 Pa. 89.

Admittedly, a guardian could be appointed to receive the fund due Edward W. Andrews, as remainderman in the instant estate, and thereupon claimants could pursue the estate in the hands of the guardian. This would entail delay and the expense of administration. Sections 201 and 202 of the Incompetents' Estates Act of 1951 are applicable only to estates of $1,000 or less. Is there any justification for a direct award in this case?

This court now has jurisdiction to appoint a guardian of the estate of an incompetent: Incompetents' Estates Act of 1951, as amended by Acts of July 28 and 29, 1953. Accordingly, within the orbit of this

court's jurisdiction alone the claims of the Commonwealth and city could ultimately be met from the funds of the estate of Edward W. Andrews. The principles of equity have long been applied in this court and claims of the Commonwealth against a distributee for maintenance of such distributee have been proved and allowed out of the distributee's share and thus a direct award has been made to the Commonwealth: Estate of Mary Elizabeth Coyle, no. 2516 of 1936 (adjudication of Ladner, J.) ; and see Blum's Estate (No. 1), 38 D. & C. 588 (York Co., 1939) ; Bell Estate, 85 D. & C. 145 (Jeff. Co., 1953).

In Boles' Estate, 316 Pa. 179 (1934), a decree of this court was modified, so as to direct that the claim of the Commonwealth of Pennsylvania for the maintenance of an insane son should be paid out of the share of that son in his deceased father's estate. That case reiterated the common-law liability of a lunatic himself in quasi-contracts for support. The court construed the Act of June 1, 1915, P. L. 661, to impose the primary obligation of support upon the person cared for and a secondary obligation upon the relatives mentioned in section 39 of the act. Consequently, the distributee's share in that estate was first applied in discharge of the claim for his maintenance and, if this proved insufficient, then the secondary obligation was imposed upon decedent.

Of course, in the instant case the estate of decedent (father)—he having died in 1910—is not liable for the maintenance of Edward W. Andrews. Therefore, only Edward's interest in said estate is available to meet the liability imposed by law. However, the equitable principles set forth in Boles' Estate apply. Accordingly, since this court has jurisdiction over the fund and all the parties it may, in order to avoid circuity of action, award the mental patient's distributive share in this estate directly to the Commonwealth and the

city on account of their claims. This is especially so, in the light of the law that prima facie proof of the Commonwealth's claim may be established by a statement under seal of the Department of Revenue (which has been presented in this case), and the fact that under the Support Law the Commonwealth stands as a substitute plaintiff to sue in the name of a person publicly cared for and to recover for the use of the Commonwealth any moneys legally due such person. Moreover, if the amount due shall have been reduced to judgment, or if the sum due is founded on an order or decree of court, then the use-plaintiff, "the public body or public agency", shall have the right to recover the same. Thus, it has been held that the orphans' court has jurisdiction to determine the right of the Commonwealth to recover the amount of an award made in the distribution of a decedent's estate to an indigent person who has received aid from the Department of Public Assistance: Blum's Estate, supra.

In Bell Estate, supra, President Judge Morris of the Orphans' Court of Jefferson County, speaking of section 5 of the Support Law of June 24, 1937, P. L. 2045, and passing upon the Commonwealth's right to be substituted as claimant for a distributee in the orphans' court in order to recover its claim for care and maintenance, which had not been reduced to judgment or otherwise liquidated, said at page 153: "We construe section 5, as did Judge Gross in Blum's Estate (No. 1), supra, as being a new and additional remedy . . . a remedy that has the 'effect of an attachment execution, without the delay caused by its cumbersone procedure'. It permits the Commonwealth to possess itself immediately of funds in any amount due the indigent person that otherwise might be turned over to the assistance recipient and dissipated, to the loss of the Commonwealth."

Though the decisions in Blum's Estate, supra, and

Bell Estate, supra, concerned direct awards of a distributee's share to the Department of Public Assistance of the Commonwealth of Pennsylvania under the authority contained in the Support Law of June 24, 1937, P. L. 2045, 62 PS §1971, the provisions of the Support Law of 1937 are applicable to the claims of the State and city for reimbursement for the care and maintenance of indigent insane persons: Stoner Estate, 358 Pa. 252 (1948); Ginder's Estate, 50 Lancaster L. R. 95 (1946), expressly approved in Stoner Estate, supra, at page 256).

Since we are discussing equitable principles, as well as statutory provisions, is there any possibility or likelihood of pecuniary harm to third persons resulting from a direct award? It is clear that no such prejudice can develop. Under the provisions of the Act of June 1, 1915, P. L. 661, 71 PS §1781; the Mental Health Act of June 12, 1951, P. L. 533, 50 PS §1071, and the Support Law of 1937, supra, the estate of a mental patient is directly liable for his or her maintenance. Under sections 6 and 7 of the Act of 1915 (71 PS §§1786 and 1787), insofar as concerns, at least, a living mental patient's estate, it is clear that the Commonwealth and city are given priority over general creditors. It is obvious, therefore, that any form or method of distribution of the mental patient-distributee's share in the instant case would entail the same result—the ultimate realization of the fund by the Commonwealth and city to the exclusion of all others.

Since the Commonwealth's position in the instant case is supported by statutory and decisional authority and since it would be in the public interest to avoid needless expense and delay, the share of Edward W. Andrews will be awarded to the Commonwealth and city, as requested, in proportion to their respective claims. I am fortified in this procedure of making a

direct award of the distributee's share as aforesaid, by reason of the assent and approval of Frank W. Melvin, Esq., trustee ad litem for Edward W. Andrews, the alleged incompetent distributee. He not only has perused and investigated the claims of the Commonwealth and city and has fully satisfied himself as to the correctness thereof, but he as well agrees, in the light of the law and the public interest, that a direct award in the instant case is proper.

Accordingly, as all parties in interest have had notice of the audit and there was no objection to the account, the balance shown thereby, principal, personalty, $11,119.54, composed as indicated, together with income, $196.94, and any additional collections to time of actual distribution, subject to distribution already made, is awarded so that the accrued and prorated income to date of death of Anna Clara Andrews, life tenant, passes to Richard H. Andrews, the executor of her will; and the rest, one fourth thereof, each to Raymond L. Andrews, Irene A. Ford and Richard H. Andrews, and the remaining one fourth, less compensation to Frank W. Melvin, Esq., trustee ad litem for Edward W. Andrews, in sum of $50, is awarded pro rata between the Commonwealth of Pennsylvania and the City of Philadelphia on account of their respective claims for maintenance of Edward W. Andrews.

Payment and distribution is so decreed, with leave to make any and all necessary assignments and transfers.

Accountant will submit a schedule of distribution in duplicate, certified by counsel to be correct and in conformity with this adjudication, which schedule, when and if approved by the auditing judge, will be annexed hereto and form part hereof.

And now, to wit, June 24, 1954, the account is confirmed nisi.