## Redican Estate

Before Klein, P.J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*John J. Cahill*, for exceptants.

*Joseph Lurie*, for Commonwealth.

LEFEVER, J., November 17, 1961.—Does the Act of December 10, 1959, P. L. 1744, 50 PS 1363, operate retroactively to relieve this decedent's estate from liability for maintenance of her mentally defective son at Selinsgrove State School for 18 years? This question of first instance is raised by the exceptions now before the court.

Decedent died intestate on July 17, 1960. She was a widow, survived by four children. Three of them were sui juris. The fourth, a mental defective, has been a patient at Selinsgrove State School since May 31, 1942.

The $15,698.02 net balance of decedent's estate consisted of proceeds of sale of decedent's homestead, $7,643.96, and personal property, $8,054.06. Decedent's sole regular income since her son's admission to the State school has been a widow's pension of $37.50 per month from the Veterans Administration; and her sole capital asset was her small homestead. "Contributions" for her maintenance and support were made to decedent from time to time by her three children. From these contributions she accumulated savings of $11,158.26, the major item of personal property in her gross estate.

At the audit, the Commonwealth presented a claim of $16,384.34 for maintenance of her son in Selinsgrove State School from his admission on May 31, 1942, to July 17, 1960. To substantiate its claim, the Commonwealth presented a "Detailed and Certified Statement of Commonwealth of Pennsylvania for Hospital Care and Maintenance," duly signed under seal by Welcome E. Aucher, Revenue Agent, under date of March 30, 1961. This shows that John Redican, patient number 1397, was admitted to Selinsgrove State School on

May 31, 1942, and "remains confined" there. The charges for each year are stated; they range from a low of $358.95 for 1943 to a high of $1,948 for 1958. The statement shows payments made each year were "none." No evidence of any court order or ruling by the Department of Revenue fixing the liability of decedent was produced. Presumably, the Commonwealth made no demand upon decedent during her lifetime nor requested a court order because of her marginal income and apparently impecunious state.

The learned auditing judge allowed the claim and awarded the balance of the estate to the Commonwealth on account of it. The three children, who claim three-fourths of decedent's estate under the Intestate Act, filed exceptions to this award.*

During her lifetime, decedent was liable for the cost of maintaining her son at Selinsgrove State School under the Act of June 1, 1915, P.L. 661, sec. 3, as amended by the Act of May 10, 1921, P. L. 438, sec. 2, 71 PS §1783, which provides:

"The husband, wife, father, mother, child, or children of any person who is an inmate of any asylum, hospital, home, or institution, maintained in whole or in part by the Commonwealth of Pennsylvania, and who is legally able so to do, shall be liable to pay for the maintenance of any such person, as herein provided" and the Mental Health Act of June 12, 1951, P. L. 533, 50 PS §1361, which provides:

"Section 701. Liability for Costs of Care of Patient.—Except as otherwise specifically provided in this act, liability for all costs of care of any patient in any State institution is hereby imposed, in the following order, against—

---

* Even if the exceptions should be sustained, the remaining one-fourth intestate share would go to the Commonwealth on account of the defective son's past maintenance, because of his primary liability under the statutes.

"(1) The patient's real and personal property;

"(2) The persons liable for the patient's support;

"(3) The Commonwealth . . ."

That decedent did not have the financial ability to pay for the maintenance of her son during her lifetime does not exonerate her estate from liability: Estate of Belinda Joyce, Deceased, no. 1613 of 1949, unreported adjudication filed July 28, 1950, by President Judge Sinkler of this court. Failure to make a claim during decedent's lifetime is no defense to her estate's liability: Boles' Estate, 19 D. & C. 366 (modified on other grounds in 316 Pa. 179). "Nor is an order of support by a court of Quarter Sessions in the lifetime of the person liable a prerequisite to imposition of the liability by the Orphans' Court upon the estate of such person after death": Stoner Estate, 358 Pa. 252,258, and cases cited.

The philosophy of the law with respect to these principles was aptly stated by President Judge Sinkler in Joyce's Estate, supra, pages 5 and 6:

"Were the decedent alive, ability to pay would be a condition to the recovery on the maintenance claim, because otherwise the government, by recovering for the maintenance of one person would pauperize the other and ultimately place upon the community or the government the burden of maintaining that other person. When the person sought to be charged has died, there is no longer the danger of his pauperization; it is merely a question of the liquidation of his estate.

"As an abstract proposition, it may be contended, since recovery against a living person is conditioned upon being financially able to pay, that there is no 'cause of action' against a living person if he is not able to pay, and therefore there is no 'cause of action' which can survive against his estate. The interpretation here followed is that the statute creates a cause of

action for maintenance, but that, with respect to a living person, it attaches a condition that the cause of action cannot be enforced unless the person is able to pay. This condition is not applicable to a suit against a decedent's estate. Accordingly, the cause of action may be asserted against the decedent's estate without regard to its financial ability to pay. This is, of course, a question of construction of the statute, but the Statutory Construction Act of May 28, 1937, P.L. 1019, Sec. 52, 46 P.S. 552, redeclaring recognized rules of interpretation, enjoins the adoption of that interpretation which will favor the public interest over the private interest. In a conflict of interest between the government units supporting the unfortunate requiring maintenance by use of money of the taxpayers, and the interest of the heirs who stand as volunteers, it is clear that the furtherance of the public interest requires that interpretation which will reduce the burden of the taxpayers and permit recovery by the government units from private sources."

The foregoing liability of the parent was modified by the Act of December 10, 1959, P. L. 1743, 50 PS §1363, which amends the Mental Health Act of 1951 as follows:

"Section 703. Court Order for Payment of Costs . . .

"(f) *The liability of any person not a patient for payment of costs of care of any mental defective or epileptic patient shall be the amount of the court order regardless of the actual costs of care of such patient, and payment of the amount so ordered shall relieve any person not a patient of all further liability for payment of costs of care of such mental defective or epileptic patient* . . .

"Section 726. Mental Defectives and Epileptics in Schools.—(a) No superintendent of any school shall accept an application for the admission of any mental

defective or epileptic until the Department of Revenue has fixed the amount, if any, to be paid, *by the patient and by the parents of the patient* for the maintenance of the patient. The amount [shall be fixed according to the ability to pay of the parent of the patient, or] *to be paid by the patient shall be fixed* according to the value of his estate. *The amount to be paid by the parent of the patient shall be fixed according to the ability of the parent to pay, taking into consideration the income of the parent, the number of other persons supported by the parent and the other financial obligations of the parent.* [Payment of] *Agreement to pay* the amount so [far as there is ability to pay,] *fixed* shall be required as a condition to the admission or detention of the patient. The amount may be changed from time to time by the Department of Revenue upon its receiving further information concerning ability to pay. *The liability of a parent for payment of the maintenance of any mentally defective or epileptic shall be the amount so fixed or so changed by the Department of Revenue, and payment of the amount so fixed or so changed shall relieve the parent of all further liability for payment of the maintenance of the patient.*" (Italics indicates new material in the 1959 Amendment; brackets indicate deletions from the old act).

It is apparent that the purpose of the Act of December 10, 1959, was to make a vital change in the law respecting the liability of parents for the maintenance of defective and epileptic patients in State schools for such patients, viz., to limit the financial obligation of the parent of such a patient to the amount fixed by the Department of Revenue contemporaneous with his admission to a state school or the amount fixed by court order. This brings a new concept into Pennsylvania law. As stated above, for years the statutes made the parent liable for the actual cost of maintenance of an

impecunious defective child in a State mental institution, limited only by his ability to pay. Moreover, in the event the parent was unable to pay the full amount during his lifetime, or if no claim was made against the parent in his lifetime, his liability for the balance carried over to his estate.

Was this amendment intended to operate retroactively? Is the liability of decedent's estate for past maintenance conditioned upon the Commonwealth obtaining an appropriate court order?

At the outset, it is to be noted that under the Mental Health Act of 1951, a patient could be admitted into a State school by two methods: (1) by a court order directing the admission and fixing the amount to be paid by the parent for the maintenance of the patient, taking "into consideration the ability to pay," or (2) by order of the Department of Revenue admitting the patient and fixing the amount of liability of the parent for maintenance "so far as there is ability to pay"; and this order could be changed by the Department of Revenue from time to time when the circumstances of the parent changed. Moreover, provision for court order to pay appears in the Act of June 1, 1915, P. L. 661, 71 PS §1784. It is thus obvious that the new act does not change the method of admission nor the manner of issuing an order fixing the liabilty of the parent for the patient's maintenance. However, the new act does *limit the liability* of the parent to the amount of the court order or ruling of the Department of Revenue. Does this relieve decedent's estate of liability for past maintenance?

"The general rule of construction is that statutes, other than those affecting procedural matters, must be construed prospectively except where the legislative intent that they shall act retrospectively is so clear as to preclude all question as to the intention of the legis-

lature": Farmers National Bank & Trust Company v. Berks County Real Estate Company, 333 Pa. 390,393. See Malicks' Petition, 137 Pa. Superior Ct. 139, 142. Moreover, the Statutory Construction Act of May 28, 1937, provides: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." P. L. 1019, 46 PS §556. See Commonwealth v. Scoleri, 399 Pa. 110, 132.

There is no clear evidence that the Act of December 10, 1959, was intended to be retroactive. The language of the act does not speak retroactively. Per contra, it speaks prospectively, viz., "The liability of any person not a patient . . . *shall* be the amount of the court order . . . and payment of the amount so ordered *shall* relieve any person not a patient of all *further* liability . . ." (Italics supplied). These words refer to the future, not to the past. Moreover, the title of the statute does not indicate that accumulated past obligations of parents of defective children are to be wiped out. Finally, reasonableness, fairness and practicality require the act to operate prospectively only.

Thousands of inmates of State schools were admitted under the old law. Obviously, the act does not require the readmission of the inmates into the State schools, and the fixing of the liability of the parent by order of court or by ruling of the Department of Revenue as a condition to the continuance in full force and effect of the existing obligations for past maintenance of inmates in these schools prior to the date of the act. Such interpretation of the act would wipe out hundreds of thousands, if not millions, of dollars of indebtedness to the Commonwealth. In this day of constantly increasing costs of State government and the ever present threat of new and higher taxes, the courts should not construe a statute to wipe out one citizen's obligation and place it upon the other citizens of the Commonwealth unless clear, unequivocal language in

the statute so directs. No such language appears in this statute.

The facts in the instant case emphasize the point. Here, decedent's son had been a patient in the Selinsgrove State School since 1942. Decedent died July 17, 1960, only seven months after the adoption of the amendment. The State authorities did nothing to obtain a court order or ruling by the Department of Revenue limiting the amount of decedent's liability. Neither did decedent. However, nothing in the statute requires the State authorities to obtain such a court order to avoid elimination or reduction of liability for past maintenance. It follows that the Act of December 10, 1959, did not have the retroactive effect of wiping out decedent's indebtedness to the Commonwealth for her son's past maintenance in Selinsgrove State School. We so decide.

The only facet of this case which gives us any pause is the fact that more than $11,000 of personal property in the estate represents contributions by decedent's three children for her maintenance and support. Exceptants urge that the equities require an award to them of this fund which originated in their contributions to their mother's need, particularly in view of the fact that the statutes place no liability upon them for the maintenance of their brother in a State institution. However, the learned auditing judge properly and succinctly answered this, viz., . . . "the completed gifts which they may have made to their mother, which are now before me as constituting her estate, cannot be taken back by them." In short, this court will not set aside these completed gifts. Moreover, as between exceptant brothers and sister and the taxpayers of the Commonwealth, the latter are to be favored.

For the foregoing reasons, the exceptions are dismissed and the adjudication is confirmed absolutely.